James CADE, Respondent,

v.

STATE of Missouri, Department of Social Services, and Gary Stangler, Director Missouri Department of Social Services, Appellants.

No. WD 55427.

Missouri Court of Appeals, Western District.

Submitted Oct. 8, 1998.

Decided Feb. 9, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1999.

Application to Transfer Denied June 1, 1999.

James M. McCoy, Jeanne M. Kovas, Div. of Legal Services, Mo. Dept. of Social Services, Jefferson City, for appellant.

Mark Gilmore Rhodes Warren, Brian K. Francka, Inglish & Monaco, P.C., Jefferson City, for respondent.

Before ULRICH, P.J., and SMART and EDWIN H. SMITH, JJ.

JAMES M. SMART, Jr., Judge.

The Missouri Department of Social Services, Division of Family Services ("DFS") suspended James Cade without pay for a total of four days for failing to wear a necktie at work. The circuit court reversed the suspension and ordered DFS to pay Cade for his four day suspension, to remove adverse information regarding the suspension from Cade's personnel file and to reimburse Cade for the costs he incurred in pursuing this action. DFS appeals the judgment, claiming that the circuit court erred by treating the matter as a contested case.

The judgment of the circuit court is reversed.

### Facts

DFS is a division of the Missouri Department of Social Services ("DSS"), created under § 660.010.3, RSMo 1994.[1] In May 1987, Administrative Policy 2–117 was adopted by DSS, providing that "[a]ll Department of Social Services (DSS) employees are expected to dress in a manner appropriate to the performance of their duties." This provision specified that department supervisors were to apply the policy fairly and equitably for all employees working in similar environments. James Cade, an employee of DFS, is a

---

**1.** All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

child placement coordinator for the Interstate Compact on the Placement of Children ("ICPC"). He has been employed by DFS for twenty-six years. On January 21, 1993, Cade appeared at work without a necktie. The following day, January 22, 1993, Cade's supervisor, Karen Unger, sent a memorandum to Cade telling him that the agency required that men in his area of responsibility wear neckties. She advised him that his failure to wear a necktie could result in disciplinary action.

On January 25, 1993, Richard Matt, Deputy Director of Children's Services, sent a memorandum to the entire staff in the Children's Services Unit of DFS regarding appropriate office attire. This memorandum did not say that neckties were required for men, although a prior memorandum had stated that neckties were required. It is not clear whether Cade received a copy of the prior memorandum. A subsequent memorandum, issued on January 27, 1993 by Matt, did not mention neckties.

On September 25, 1995, Cade came to work without a necktie. On September 28, 1995, Unger sent Cade an e-mail message stating that Cade had been seen without a necktie and admonished him to "abide by the dress code which includes wearing a tie." On October 2, 1995, Cade told Unger that he refused to wear a tie, and he did not believe that the agency could require that he wear one. On October 10, 1995, Unger notified Cade that he would be suspended without pay for one day because he "failed to respond in a reasonable manner to the lawful orders of instructions of persons with duly delegated authority over the employee" by his failing to wear a necktie.

On October 10, 1995, Cade filed a Step I Grievance concerning his suspension, alleging that the necktie policy constituted sexual discrimination and harassment. Cade asked for recovery of one day's pay and costs. He also asked that references to the suspension be removed from his personnel file and that a directive be issued that all harassing activities cease. On October 17, 1995, a Step I Grievance Review was held by Anna Stone, an Assistant Deputy Director of DFS. Stone denied Cade's grievance; and Cade was suspended on October 18, 1995.

On October 29, 1995, Cade filed a Step II Grievance Review. On November 9, 1995, a hearing was conducted by William Rapps. That same day, Cade appeared at work without a necktie. A few days later, on November 15, 1995, Cade again came to work without a tie. On November 20, 1995, Cade was notified that he would be suspended without pay for three days because of his refusal to respond to the repeated directives of his supervisors in that he did not wear a necktie to work on November 9, 1995 and November 15, 1995.

On November 22, 1995, Cade filed a Step I Grievance regarding the three-day suspension. He was notified that review of his grievances would be consolidated into one proceeding because the issues were substantially the same. Cade was suspended for three days without pay on December 5, 6, and 7, 1995. On December 26, Cade filed a request for a Step III Grievance.

On January 10, 1996, Director Schultz sent Cade a letter responding to his Step II Grievance, denying his appeal. On February 1, 1996, a Step III Grievance Panel, designated by the Director of the Department of Social Services, Gary Stangler, was convened. On February 13, 1996, the chair of that panel, Annie Tremain, issued a letter to Cade denying his appeal. No taped or stenographic record of the grievance proceedings was made. DFS presented no evidence and called no witnesses.

Cade filed a petition for judicial review with the circuit court on March 13, 1996, claiming that the circuit court had "subject matter jurisdiction pursuant to Section 536.100 through and including 536.150 RSMo (1994)." The circuit court found it had jurisdiction to review the matter as a

contested case pursuant to § 536.101(2), RSMo 1994. A hearing on the matter was held October 27, 1997. The parties stipulated to the record of the grievance procedures. Cade was allowed to present evidence at the hearing and DFS was allowed a limited response, based upon what Cade presented at the hearing. The trial court reversed the agency's decision, finding that the decision to suspend Cade for four days was unsupported by competent and substantial evidence upon the whole record and was arbitrary, capricious and unreasonable. The trial court ordered that Cade's suspension be reversed, that adverse information relating to the suspension be removed from Cade's file, and that Cade be reimbursed for costs.

DFS appeals.

### Contested and Noncontested Cases

 DFS raises three points on appeal,[2] contending that the trial court erred: (1) by treating the matter as a contested case; (2) by deciding that the Deputy Director of DFS does not have the authority to enforce reasonable dress code requirements; and (3) by awarding Cade his costs in this action. Because we agree that the trial court erred by treating this matter as a contested case, we reverse and remand the case. Because confusion abounds about the classification of cases into the categories of "contested" and "noncontest-ed" we begin our analysis by examining these classifications.[3]

 A "contested case" before an administrative agency is defined by statute as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing[.]" § 536.010(2), RSMo 1994. The fact that there is some contest between the parties does not, in and of itself, make for a contested case. *See, e.g., City of Richmond Heights v. Board of Equalization of St. Louis County,* 586 S.W.2d 338, 342 (Mo. banc 1979). The classification of case as "contested" or "noncontested" is not left to discretion of the agency but rather is to be determined as matter of law. *State ex rel. Valentine v. Board of Police Com'rs of Kansas City,* 813 S.W.2d 955, 957 (Mo.App.1991). The "law" requiring a hearing may be any statute or ordinance or any state or federal constitutional provision. *State ex rel. Yarber v. McHenry,* 915 S.W.2d 325, 328 (Mo. banc 1995). This right is determined by substantive law outside the Missouri Administrative Procedure Act. *Id.*

 The key to the classification of a case as "contested" or "noncontested" is the requirement of a hearing. *Shawnee Bend Special Rd. Dist. "D" v. Camden County Comm'n,* 800 S.W.2d 452, 456 (Mo. App.1990); *Rackley v. Firemen's Retirement Sys.,* 848 S.W.2d 26, 28 (Mo.App.

2. Cade contends that DFS is not in compliance with Rule 84.04(d) because its Points Relied On are inadequate. Failure to follow the rule preserves nothing for review, *Dinwiddie v. State,* 905 S.W.2d 879, 881 (Mo.App. 1995), and violations of the rule constitute grounds for dismissal of the appeal. *Jones v. Wolff,* 887 S.W.2d 806, 808 (Mo.App.1994). This court is under no obligation to review a brief that is not in conformity with the rules of appellate procedure. *Id.* Rule 84.04 provides, "[t]he points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. . . ." This rule is designed to give notice to opposing parties about the precise matters to be contended with and to give notice to the appellate court as to what issues are being presented for review. *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). However, when there is substantial compliance with the rule, the court prefers to decide cases upon their merits, even if a point is technically deficient. *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo. banc 1997). DFS's points relied on provide sufficient notice of the issues to merit appellate review.

3. For example, Cade mixes the standards for review in his brief. Cade cites *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), the standard for court-tried cases, and *City of Cabool v. Missouri State Bd. of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985), the standard of review for an appellate court reviewing decisions of administrative agencies.

1993). The term "hearing" in § 536.010, means a proceeding in which evidence may be presented, and witnesses may be examined and cross-examined. *See Hagely v. Board of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663, 668 (Mo. banc 1992).[4] An administrative decision is considered to be "noncontested" if "made without any requirement of an adversarial hearing at which a measure of procedural formality is followed." *Strozewski v. City of Springfield*, 875 S.W.2d 905, 906 (Mo. banc 1994). Procedural formalities in contested cases generally include notice of the issues, § 536.067; oral evidence taken upon oath or affirmation, § 536.070; the calling, examining and cross-examining witnesses, § 536.070; the making of a record, § 536.070; adherence to evidentiary rules, § 536.070; and written decisions including findings of fact and conclusions of law, § 536.090. *See Hagely*, 841 S.W.2d at 668.

■ Judicial review in a contested case is conducted upon the record made before the agency. *Shawnee Bend*, 800 S.W.2d at 456. The proper standard of review in contested cases is found in § 536.140, which provides:

1. The court shall hear the case without a jury and, except as otherwise provided in subsection 4, shall hear it upon the petition and record filed as aforesaid.

2. The inquiry may extend to a determination of whether the action of the agency

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

■ The standard of judicial review of noncontested cases differs from that of contested cases. Judicial review of noncontested cases is governed by § 536.150. *State ex rel. Rice v. Bishop*, 858 S.W.2d 732, 734 (Mo.App.1993). In noncontested cases, the circuit court does not review the record for competent and substantial evidence, but instead conducts a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion. *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 94–96 (Mo.App.1982). The circuit court does not defer to facts found or credibility assessed by the agency and need not conform doubtful evidence to the agency's decision. *Id.* at 94–95. Unlike its role in contested cases, the circuit court in a noncontested case acts to determine the evidence and give judgment from that evidence. *Id.* at 95.

■ On appeal of a non-contested case, this court reviews the circuit court's judgment, not the administrative agency's decision. *Id.* at 100. The scope of our review is dictated by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Consequently, we review the circuit court's judgment to determine whether its finding that the agency decision was unconstitutional, unlawful, unreasonable, arbitrary, capricious or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law. *Id.*

---

**4.** *Hagely* suggested that if a hearing is not held pursuant to the format required by the Missouri Administrative Procedures Act, the case does not qualify as a contested case. *Hagely*, 841 S.W.2d at 668–69. *Yarber* over- ruled this portion of *Hagely*, focusing on "not whether the agency in fact held a contested case hearing, but whether it should have done so." *Yarber*, 915 S.W.2d at 328.

■ Not every case requiring a hearing is a contested case. For example, in *State ex rel. Mitchell v. Dalton*, 831 S.W.2d 942 (Mo.App.1992), the court held that a parole hearing was not a contested case because certain "essential indicia of an adversary hearing" were missing from the process. *Id.* at 944. The denial of sick leave pay to certain teachers was held to be noncontested because the "grievance procedure, while formal in some respects, does not meet all of the formal requirements for a contested case...." *Franklin v. St. Louis Bd. of Educ.*, 904 S.W.2d 433, 435 (Mo.App.1995). The discharge of a probationary employee was not considered a contested case in *Hardy v. City of Berkeley*, 936 S.W.2d 879, 882 (Mo.App.1997). Other cases considered to be noncontested include *Vacca v. Administrative Law Judge Review Comm.*, 945 S.W.2d 50, 51 (Mo.App.1997) (investigation of an ALJ by the ALJ Review Committee); *State ex rel. Valentine v. Bd. of Police Comm'rs of Kansas City*, 813 S.W.2d 955, 957 (Mo. App.1991) (denial of an application for disability benefits); *Vaughn v. Ems*, 744 S.W.2d 542, 546–47 (Mo.App.1988) (denial of a liquor license); *Welsch v. Department of Elementary & Secondary Educ.*, 731 S.W.2d 450, 453 (Mo.App.1987) (hearing as to the proposed suitability for a sheltered workshop program did not qualify as a contested case); and *Long v. Bates County Mem'l Hosp. Bd. of Directors*, 667 S.W.2d 419, 421 (Mo.App.1983) (suspension of a doctor's staff privileges);.

### Cade's Grievance Hearings Were Not Contested Cases

■ Cade filed Step I, Step II, and Step III Grievances with the DFS. Section 36.070.3 authorizes the State Personnel Board to "determine by rule the procedures for and causes of disciplinary actions including termination, demotion and suspension...." Grievance procedures are codified in 1 CSR 20–4.020. The objectives of grievance procedures include, *inter alia*, the quick resolution of grievances and the informal settlement of disagreements at the employee-supervisor level. 1 CSR 20–4.020 does not specify procedural formalities required in contested cases. Nothing requires the making of a record in grievance proceedings. Indeed, the informality of the procedures allows for flexibility in processing issues that do not require more formal interventions.

The informal grievance procedure "shall not apply in instances where the grievance involves personnel transactions or administrative decisions of the appointing authority for which the personnel law or rules provide a specific appeal to the Personnel Advisory Board or review by the personnel director." 1 CSR 20–4.020(1)(B). Hearings before the Personnel Advisory Board ("PAB") are considered contested cases under § 36.390.9. By contrast, suspensions for a period of less than five days, such as Cade's suspension, are specifically exempt from PAB hearings. § 36.370, RSMo 1994. Suspensions not subject to a hearing before the PAB do not fit the procedural requirements of contested cases.

This court has reviewed such suspensions as noncontested cases. In *State ex rel. Rice v. Bishop*, 858 S.W.2d 732 (Mo. App.1993), a police officer sought review of a suspension for five days, without pay, imposed by the police chief. The suspension was imposed as discipline for "an inappropriate comment to a subordinate officer." *Id.* at 734. The case was reviewed as an administrative decision as a noncontested case. *Id.* at 736.

Because grievance proceedings are handled informally, no record is required as a basis for review. In the instant case, no record of the agency proceedings was made. The DFS did not introduce any evidence and there is no indication that any witnesses were sworn or heard. The issue appears to be primarily one of policy; there is little dispute about the facts. In its treatment of the cause as a contested case, the court had very little record to review. Had the trial court properly

treated the matter as a noncontested case, both sides would have been afforded the opportunity to fully present their positions. The appropriate procedure would have been for the trial court to take up the matter *de novo*, under the standards for noncontested cases. DFS was improperly limited in the presentation of its case.

■ Cade fails to demonstrate any legal requirement that he be afforded a formal hearing under § 536.010(2). Cade relies only upon the due process clause, contending that the loss of four days of salary involves the taking of property without the due process of law. However, Cade fails to take into account that he is entitled only to the process which is *due*. In this case, that is the process due him under Missouri statutes. His four-day suspension did not trigger the protection of the Missouri Administrative Procedures Act, and did not authorize an appeal to the PAB as in contested cases. Instead, Cade went through the process established for determining grievances. Cade does not claim that the five-day criterion established in § 36.370 as the trigger for PAB review is not constitutional.

Cade's reliance upon *State ex rel. Yarber v. McHenry*, 915 S.W.2d 325 (Mo. banc 1995), in support of his claim is misplaced. *Yarber* concerned the loss of school credit because of a student's excessive absences. The court held that Missouri statutes established a state-created property right in education. *Yarber*, 915 S.W.2d at 328. Here, the Missouri statutes governing Cade's rights as an employee establish the procedures for suspensions under five days. These procedures were followed here. Even though a hearing before the PAB was not required, review was still provided. Noncontested cases are reviewed pursuant to § 536.150. Cade himself seemed uncertain about whether his grievances should have been reviewed by the circuit court as a contested case or as noncontested case. He invokes statutes for both in his petition, alleging, "subject matter jurisdiction pursuant to Section 536.100 through and including 536.150 RSMo (1994)."

Cade also relies upon *Winegar v. Des Moines Indep. Comm. Sch. Dist.*, 20 F.3d 895 (8th Cir.1994) as support for his position. In *Winegar*, an industrial arts teacher was suspended for a four-day period because of an altercation with a student. The Eighth Circuit found that the teacher's property and liberty interests were implicated and that these interests were weighty. *Id.* The teacher's interests were found to be "retention of his job, his assignment, and his good name." *Id.* at 901. None of these interests are implicated in the instant case—Cade is seeking to protect his "right" not to wear a tie at work. In any event, in *Winegar*, the court was not concerned with whether the procedure was contested or noncontested. The issue in *Winegar* was what process was due the teacher, who had been denied the opportunity to present witnesses and to cross-examine adverse witnesses. In this case, Cade received the process due him under the Missouri statutes. It is the review of that process that is the issue. Point I is granted.

■ Our disposition of Point I makes it unnecessary to fully address DFS's remaining points. However, because the issue may arise during further proceedings, we will examine DFS's contention that the trial court erred in finding that "[a]t all relevant times herein, Richard Matt had no authority to establish a dress code for DSS employees employed with in the Children's Services Section."

■ DSS, as an administrative agency and a creature of statute, has only such authority as delegated by the legislature. *See Pulitzer Publ'g. Co. v. Missouri State Employees' Retirement Sys.*, 927 S.W.2d 477, 480 (Mo.App.1996) (citation omitted). Administrative regulations must be promulgated within the scope of that authority or they are considered void. *King v. Division of Employment Sec.*, 964 S.W.2d 832, 835–36 (Mo.App.1997). The

government is accorded wide latitude in matters concerning its own internal affairs. *Kelley v. Johnson,* 425 U.S. 238, 247, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) (citing *Cafeteria Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). For example, in *Kelley,* the United States Supreme Court upheld a regulation limiting the length of a policeman's hair. *Id.* at 249, 96 S.Ct. 1440. Similarly in *Tardif v. Quinn,* 545 F.2d 761, 763 (1st Cir.1976), the court held that the choice of apparel is not "beyond the scope of the demands which an employer, public or private, can legitimately make upon its employees." Moreover, an employer may require that male employees conform to different grooming standards than female employees. *See Fountain v. Safeway Stores, Inc.,* 555 F.2d 753, 755 ( 9th Cir. 1977). The establishment of a dress code by DSS is within its authority.

However, this is not the same issue raised by appellants. They contend that Deputy Director Matt had the authority to establish and apply dress code requirements. There is some question as to whether Matt had been granted such authority. The transcript reveals that DSS policy granting division directors the authority to establish dress codes was not established until June 1997, over four years after Cade was suspended. Moreover, Administrative Services Policy 2–117 ("ASP 2–117"), which establishes the DSS dress code, does not contain the requirement that male employees wear neckties. ASP 2–117 requires that "employees are expected to dress in a manner appropriate to the performance of their duties." Several specific examples of inappropriate modes of dress are given. There is no mention of neckties at all.

The questions of whether Matt had the authority to establish dress code requirements and whether neckties are considered an appropriate mode of dress cannot properly be determined in this appeal. The answers to both questions depend on facts that are not fully developed in the record because of the nature of the hearing in the trial court. We therefore decline to decide these questions beyond holding that an administrative agency has the power to establish a dress code for its employees.

The trial court erred in treating this case as a contested case. DFS should have been allowed to present a full opportunity to present its case. Because the procedures for an appeal of a noncontested case were not employed in this case, we remand the case for further proceedings. Both Cade and the DFS will be allowed to present evidence and arguments on remand.

The judgment is reversed and this case is remanded for further proceedings.

ULRICH and EDWIN H. SMITH, JJ., concur.