LEGAL COMMUNICATIONS
CORPORATION,
Appellant,

v.

ST. LOUIS COUNTY PRINTING &
PUBLISHING COMPANY, INC., d/b/a
St. Louis Printing, Respondent.

No. ED 76211.

Missouri Court of Appeals,
Eastern District,
Division One.

May 9, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 7, 2000.

Case Transferred to Supreme Court
June 28, 2000.

Case Retransferred to Court of
Appeals Aug. 29, 2000.

Original Opinion Reinstated
Sept. 6, 2000.

Robert A. Hoemeke, Benjamin A. Lipman, St. Louis, for appellant.

Robert L. DeVoto, Arthur S. Hyatt, St. Louis, for respondent.

JAMES R. DOWD, Judge.

### Facts

On November 24, 1997, the Circuit Court of the City of St. Louis met *en banc* in its November term meeting to take up matters relating to the operation of the Court. Pursuant to Section 493.110, the Circuit Court sat as a board (hereafter "the Board") to determine which entities were qualified to publish legal notices under two separate statutes, Sections 493.070 and 493.100.[1] Section 493.100 provides the qualifications to publish real estate foreclosure notices, and Section 493.070 provides the qualifications to publish legal notices other than foreclosure notices. At the meeting, the Board certified several publications, including the Daily Record and St. Louis Legals. The Daily Record is produced by Legal Communications Corp.

---

1. Section 493.110 RSMo 1994 provides, in pertinent part, that every two years:

[A] board, consisting of the judges of the circuit court of [the] city,... or a majority of the same, shall... cause to be published in some daily newspaper of said city a notice for at least ten days announcing and designating the time and place when and where the said board shall have a hearing to determine what newspapers in such cities are eligible to publish such notices under the provisions of [Section 493.100].... At the time and place so designated the said board shall determine, by such method as shall seem to it best, what newspapers... are eligible under the provisions of [Section 493.100], and a record of the decisions of the board and a list of the newspapers so declared eligible shall be made in such court and in such manner as the board shall determine.

(hereafter "Legal Communications"). St. Louis Legals is produced by St. Louis County Printing and Publishing Co., Inc. (hereafter "St. Louis Printing"). On December 29, 1997, St. Louis Printing admitted it was not qualified to print legal notices other than foreclosure notices under Section 493.070 and withdrew its petition to print these notices. Nevertheless, it maintained that it was qualified to publish real estate foreclosure notices under Section 493.100. Because it was certified by the Board, St. Louis Printing began publishing foreclosure notices in January of 1998. Therefore, we are only called upon to decide the validity of its certification under Section 493.100.

On June 16, 1998, Legal Communications filed a petition for declaratory judgment in the Circuit Court of the City of St. Louis, seeking a declaration that St. Louis Printing failed to meet the requirements of Section 493.100 and was, therefore, improperly certified to publish foreclosure notices.[2] Legal Communications alleged that St. Louis Printing had not established that it had cash receipts in excess of $6,000 and that it had not published in the City of St. Louis continuously for three consecutive years prior to its qualification by the Board and therefore did not meet the statutory requirements.

On March 8, 1999, St. Louis Printing filed a motion to dismiss, which the trial court treated as a motion for judgment on the pleadings. The trial court granted the motion, determining that the Board had unreviewable discretion. Legal Communications appeals from that order and judgment.

### Standing

We must first determine whether Legal Communications has standing to bring this action against St. Louis Printing. St. Louis Printing contends that Legal Communications lacks standing because the Board's decision does not directly affect any of its legally protectable interests.

The standing to contest an administrative action depends on a variety of considerations, including the nature and extent of the interest of the party contesting the action, the character of the administrative action, and the terms of the governing statute.[3] The question of standing to oppose an administrative decision is a question of law, but one driven by the peculiar facts of each case.[4] It rests on policy considerations rooted in the values set out in the legislation in question.[5] A plaintiff properly has standing if the decision of the administrative body adversely affects an interest the law protects.[6] The injury to the party must arguably fall within the "zone of interest" the statute protects.[7]

Chapter 493 provides no procedure by which the decisions of the Board may be appealed. Consequently, we cannot look to the statute for explicit guidance as to

2. Section 493.100 provides in pertinent part:

[N]o notice or other advertisement permitted or required by law to be made in conformity with the power of sale of real estate contained in any mortgage or deed of trust shall be valid or sufficient unless such notice or other advertisement shall be published in a daily newspaper, published in [that] city, whose annual cash receipts from circulation shall exceed six thousand dollars; and such receipts shall be paid by the bona fide individual and separate subscribers of such newspapers in [that] city, and in computing such receipts there shall not be counted or included cash received from advertising or from any other source.

3. *State ex rel. Schneider v. Stewart,* 575 S.W.2d 904, 909 (Mo.App.1978).

4. *Citizens for Safe Waste Management v. St. Louis County,* 810 S.W.2d 635, 639 (Mo.App. E.D.1991).

5. *Schneider,* 575 S.W.2d at 909.

6. *Id.* at 910.

7. *Farmer's Bank of Antonia v. Kostman,* 577 S.W.2d 915, 920 (Mo.App. W.D.1979); *Association of Data Processing Service Org. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

**748**

who has standing to contest the Board's action. We can, however, look to the purpose of the statute to determine if the alleged injury to Legal Communications is the type of interest the statute seeks to protect.

The purpose of Section 493.100 is to ensure that those who have an interest in real property will receive adequate notice if that property becomes subject to a foreclosure sale. In order for a foreclosure notice to be valid, it need only be published in one newspaper certified under the statute.[8] Every certified newspaper, therefore, must meet the statutorily created requirements to advance the statute's purpose. Unless a publication meets the subscription, cash receipts and duration requirements, it presumptively fails to provide actual and constructive notice contemplated by the statute.

Legal Communications alleged in its petition that St. Louis Printing was not qualified to publish foreclosure notices and that it was damaged by its unauthorized publication. The interest Legal Communications seeks to protect is its right to compete only with lawful competition. St. Louis Printing observes, correctly, that there is no right to be free from legitimate competition.[9] Standing exists if the alleged illegitimate competition of St. Louis Printing damages Legal Communications in a manner sought to be prevented by the statute.

The status of Legal Communications as a competitor is not sufficient, by itself, to give it standing to challenge the Board's action.[10] The status of a competitor has, however, been used in combination with policy considerations to grant standing to challenge the decisions of an administrative agency. In *Farmer's Bank of Antonia v. Kostman,* the Western District held that a bank had standing to challenge the decision of the Director of Finance to issue a certificate of authority to a competitor.[11] The Court reasoned that standing was necessary "not to protect a monopoly, but to keep the system of banks within an equipoise of competition and regulation and so secure the public against the economic havoc of bank failure."[12] The Supreme Court of the United States reached a similar holding in *Association of Data Processing Service Org. v. Camp.*[13]

Section 493.100 contemplates a similar system of competitive regulation. The statute sets out minimum circulation and duration qualifications necessary to publish real estate foreclosure notices. The goal of the statute is to give notice to the widest audience possible. In order to ensure that each newspaper that publishes these notices can reach the entire audience, the statute mandates the duration and circulation requirements. To attain this goal, a newspaper must successfully compete with other newspapers. If Legal Communications is forced to face illegitimate competition, its ability to compete is impeded, and the purpose of the statute is emasculated. Legal Communications has standing to bring the instant action.

*Constitutional Validity of Section 493.110*

St. Louis Printing argues that if the Board's decision can be reviewed, this case cannot be decided without construing the constitutionality of Section 493.110. Article V, Sec. 3 of the Missouri Constitution provides that our Supreme Court has exclusive jurisdiction over real and substantial constitutional challenges to

---

8. Section 493.100.

9. *E.g., Community Care Centers, Inc. v. Missouri Health Facilities Review Comm.,* 735 S.W.2d 13, 16 (Mo.App. W.D.1987).

10. *St. Joseph's Hill Infirmary, Inc. v. Mandl,* 682 S.W.2d 821, 825 (Mo.App. E.D.1984).

11. *Farmer's Bank,* 577 S.W.2d at 921.

12. *Id.;* see also *Bank of Belton v. State Banking Bd.,* 554 S.W.2d 451, 453 (Mo.App.1977).

13. *Association of Data Processing Service Org. v. Camp,* 397 U.S. at 157, 90 S.Ct. at 831, 25 L.Ed.2d 184.

a statute's validity.[14] However, this Court may dispose of colorable claims.[15] In this case, it is undisputed that the Board acted as an administrative agency. The Missouri Constitution provides that decisions of administrative agencies are "subject to direct review by the courts as provided by law." [16] Nothing in the Missouri Constitution prohibits the judges of the Circuit Court from sitting as an administrative board. St. Louis Printing's jurisdictional contention is merely colorable and does not invoke the exclusive jurisdiction of the Missouri Supreme Court.

### Discretion of the Board

In order to determine if the Board had unreviewable discretion, we must first classify the character of the proceeding in question. If it was a contested case, the trial court had no jurisdiction because Legal Communications failed to file its petition within thirty days of the Board's decision as required by Section 536.110. If it was not a contested case, Section 536.150 controls and expressly provides that Legal Communications has the right to bring a declaratory judgment action to review the Board's decision.

 A contested case before an administrative agency is one in which "legal rights, duties or privileges of specific parties are required by law to be determined after hearing." [17] In *Cade v. State*, the Western District defined the term "hear-

ing" as a proceeding in which evidence may be presented, and witnesses may be cross-examined.[18] The Missouri Supreme Court found in *Strozewski v. City of Springfield* that a hearing is considered noncontested if it is "made without any *requirement* of an adversarial hearing at which a measure of procedural formality is followed." [19] Procedural formalities in contested cases generally include: notice of the issues; oral evidence taken upon oath or affirmation; the calling, examining and cross-examining of witnesses; the making of a record; adherence to evidentiary rules; and written decisions including findings of fact and conclusions of law.[20]

 The statute governing the Board's newspaper certification process does not require procedural formalities nor were any followed.[21] There is no record of any evidence presented to the Board. No witnesses were called, examined, or cross-examined.

St. Louis Printing argues that the Board proceeding was contested. It points to the verbal objection made by Legal Communications at the November term meeting and a series of letters as proof that it was contested. However, the verbal objection and the letters do not render the Board proceeding a contested case. They may indicate that some argument was made, but they do not give the proceeding the formalities required by *Strozewski* and *Cade.*[22]

14. *Hampton Foods, Inc. v. Wetterau Finance Co.*, 831 S.W.2d 699, 701 (Mo.App. E.D. 1992).

15. *Id.*

16. Mo. Const. of 1945, art. V, Section 18 (1998); *Shawnee Bend Special Road Dist. v. Camden County*, 839 S.W.2d 343 (Mo.App. S.D.1992).

17. Section 536.010.

18. *Cade v. State*, 990 S.W.2d 32, 37 (Mo.App. W.D.1999).

19. *Strozewski v. City of Springfield*, 875 S.W.2d 905, 906 (Mo.banc 1994)(emphasis added).

20. Sections 536.067, 536.070 and 536.090; *Cade v. State*, 990 S.W.2d at 37.

21. Section 493.100.

22. *City of Springfield*, 875 S.W.2d at 906; *Cade v. State*, 990 S.W.2d at 37.

### Standard of Review on Appeal

■ On appeal of a noncontested case, we review the trial court's judgment, not the decision of the administrative agency.[23] The scope of our review is controlled by Rule 73.01 as construed in *Murphy v. Carron*.[24] We must sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law.[25]

### The Trial Court's Standard of Review

■ The trial court based its order granting judgment on the pleadings because it determined that the Board had unreviewable discretion. Judicial review of noncontested cases is governed by Section 536.150.[26] The statute mandates that the trial court conduct a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's action is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion.[27] The trial court gives no deference to the administrative agency in terms of facts found or credibility assessed and need not conform doubtful evidence to the agency's decision.[28] In a noncontested case, the trial court determines the evidence and renders judgment from that evidence.[29] Consequently, in this case, the Board's decision is not unreviewable; rather, it is subject to *de novo* review by the trial court.

### Mootness

■ St. Louis Printing has also filed a motion to dismiss for mootness. It argues that no justiciable controversy remains because its authority to publish real estate foreclosure notices expired on December 31, 1999. However, on December 30, 1999, the Board again qualified St. Louis Printing to publish for another two years. A dispute still exists between the parties. Furthermore, if this case was moot, Legal Communications would be forced to file a new lawsuit every two years to challenge the Board's action. In *Gramex Corp. v. von Romer*, the Missouri Supreme Court held that if a case "involves questions capable of repetition, yet evading review," it is not moot.[30] Because this case involves such a question, it is not moot.

The order granting judgment on the pleadings is reversed. This case is remanded to the trial court with instructions to conduct a *de novo* review of the Board's decision. Respondent's motion to dismiss for mootness is denied.

GARY M. GAERTNER, P.J., PAUL J. SIMON, J., concurs.

23. *Id.*

24. *Id.*

25. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

26. *Cade v. State*, 990 S.W.2d at 37; *State ex rel. Rice v. Bishop*, 858 S.W.2d 732, 734 (Mo. App.1993).

27. *Cade v. State*, 990 S.W.2d at 37; *Phipps v. School Dist. Of Kansas City*, 645 S.W.2d 91, 94–96 (Mo.App.1982).

28. *Id.*

29. *Id.*

30. *Gramex Corp. v. von Romer*, 603 S.W.2d 521, 523 (Mo.banc 1980).