STATE of Missouri ex rel. Acting
Public Counsel, John B.
COFFMAN, Appellant,

v.

PUBLIC SERVICE COMMISSION OF the STATE of Missouri, A State Agency, and its Members Kevin Simmons, Connie Murray, Shelia Lumpe, Steve Gaw and Bryan Forbis in their Official Capacity, Official Capacity, Sprint Missouri, Inc., Respondents.

No. WD 62016.

Missouri Court of Appeals,
Western District.

Oct. 28, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2003.

Michael Francis Dandino, Jefferson City, for appellant.

William Keith Haas, Jefferson City, Lisa Charlotte Creighton–Hendricks, Overland Park, KS, for respondent.

RONALD R. HOLLIGER, Judge.

Sprint Missouri, Inc., d/b/a Sprint, filed a tariff with the Public Service Commission (Commission) in which it proposed to conduct a "rebalancing" under § 392.245.9, RSMo 2000,[1] of the amounts that Sprint charges for intrastate access services and the charges assessed for basic local service. The Office of Public Counsel (Public Counsel) intervened and sought to block the proposed rebalancing, but the Commission discounted the Public Counsel's objections and approved the proposed Sprint rebalancing without a hearing.

Public Counsel now appeals, arguing several grounds of error. Although we find that the Commission was not required to conduct a hearing, we find that the Commission erred by failing to make adequate findings with regard to the Sprint rebalancing to permit meaningful judicial review. We, therefore, reverse and remand for further proceedings.

## BACKGROUND

1. *Relevant Telecommunications Infrastructure:*

A brief explication of the basic telecommunications infrastructure is necessary to aid in understanding the issues raised in this case. Before a customer's telephone can make telephone calls, the telephone company must install wiring and/or fiber optic cable connecting the customer's telephone equipment and the company's central office (or a remote office, which, in turn, connects to the central office via a

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

high-capacity cable). That wire or cable is referred to as the "local loop." The central office contains switching equipment which enables local calls to be routed to the called party. The industry term for the provision of service over the local loop and local switching operation is "basic local service." The central office also contains equipment that provides customers with access to the various long-distance companies' long-distance intrastate networks (this is termed "intrastate access service"). A long-distance call traverses those networks until it arrives at the central office serving the called party, where it is routed to the called party's local loop and their telephone or other equipment attached to the phone connection.

The division between basic local service and intrastate access service is significant because, historically, providers of intrastate access service have been required to partially subsidize the costs of basic local service. This subsidy was instituted under the public policy rationale that the infrastructure enabling basic local service (the local loop and central office) are just as essential to providing intrastate and long-distance services. Without the local telephone lines, long-distance access is meaningless; therefore, it was thought to be prudent to require long distance companies to share a portion of the cost burdens associated with providing basic local service. That rationale, however, is not universally accepted and is challenged by certain long-distance telecommunications carriers, including Sprint.

2. *Section 392.245.9, RSMo:*

Section 392.245.9, RSMo, addresses regulation by the Commission of telecommunications companies who become eligible for regulation as "price cap" companies.[2] The

statute contains two provisions especially relevant to the case at bar. First, the statute requires that the Commission conduct an investigation, within one year of a company coming under "price cap" regulation, into the costs of providing both basic local service and intrastate access service, as compared to the prices charged for those services. Second, if the Commission concludes that the costs of providing basic local service are higher than the price being charged for that service **and** that the costs of providing intrastate access service are lower than the prices charged for that service, then the telecommunications company is to be permitted to "rebalance" its prices by increasing the price for basic local service while decreasing the prices charged for intrastate access service. The company may increase the prices charged for basic local service to offset the loss in profit from reduction of intrastate access prices, but that increase may not be more than $1.50/month in a given year. Further, a company is eligible for rebalancing in only the first four years it is regulated as a "price cap" company.

3. *The Challenged Sprint Rebalancing:*

Sprint first became regulated as a "price cap" company in 1999. Sprint rebalanced its rates in 2000, the first year it attained that status, as it was automatically entitled to conduct that first rebalancing under § 392.245.9, RSMo. The Commission, however, failed to conduct an investigation into Sprint's costs of providing basic local service and intrastate access service within the one year deadline provided by § 392.245.9, RSMo.

In 2001, Sprint again sought to rebalance its rates. It first informally contacted the Commission, which arranged to

---

2. The price cap regulation statutes were enacted to provide a measure of deregulation to telecommunication companies, while protect-

ing consumers, to some extent, from dramatic price increases.

have members of its staff meet with Sprint personnel. During that meeting, Sprint explained the cost studies that it had prepared to determine the long term incremental costs of providing basic access service and intrastate access services.

On October 25, 2001, Sprint filed its tariff seeking to rebalance its rates,[3] with an effective date of December 11, 2001, supporting its application by the above-mentioned cost studies. Public Counsel filed an objection on December 3, 2001, seeking to suspend the proposed rates, arguing that the cost studies were flawed and seeking a contested hearing on the issue. The Commission denied Public Counsel's request for hearing and approved Sprint's proposed rebalancing. After its request for rehearing by Commission was denied, Public Counsel filed a writ of review in the circuit court, which affirmed the actions of the Commission. The present appeal follows.

### ISSUES ON APPEAL

Public Counsel presents four points on appeal. First, Public Counsel argues that the Commission erred by approving Sprint's tariffs without conducting an investigation into the company's costs of providing local and access service and by failing to issue a written report of its conclusions after that investigation. Public Counsel contends that, by doing so, the Commission violated Sections 392.245.9 and 386.420.2, RSMo.

Second, Public Counsel contends that the Commission's order approving the tariffs was unlawful because of the Commission's interpretation of Section 392.245.9, RSMo, that it was required to approve the tariff merely if the cost justification proposed by Sprint satisfied a simple mathe-

matical calculation. Public Counsel argues that by adopting that interpretation, it unlawfully abdicated its authority.

Public Counsel next takes the position that the Commission's order approving the tariffs was unreasonable because the Commission acted in a summary manner and without competent and substantial evidence because it rejected Public Counsel's hearing request and accepted Sprint's cost studies and the Commission staff recommendation, despite the fact that the latter two were inadmissible under Section 536.070(11), lacked proper evidentiary foundation, and were hearsay.

Fourth, Public Counsel argues that the Commission's order was unlawful and unreasonable because the Commission failed to make adequate findings of fact and conclusions of law in support of the order. Specifically, Public Counsel contends: (a) there were no factual findings that the mandated cost justification existed, instead making conclusory statements that the tariff complied with statute; (b) there were no findings that the methodology employed by Sprint in compiling its cost studies was proper, accurate, and correct; and (c) there was no finding that the cost studies satisfied the investigatory requirement within Section 392.245.9, RSMo.

### DISCUSSION

Our resolution of the present appeal requires us to address Public Counsel's points on appeal out of turn. Before directly addressing those points, however, a brief digression is necessary to lay the legal framework for resolution of the contested issues.

---

**3.** The procedure followed by Sprint is known as the "file and suspend" method, in which a utility files proposed rates with the Commission, which may then elect to suspend those rates pending further investigation or hearing, or permit those rates to go into effect without further action by the Commission.

### *Is this a Contested or Noncontested Case?*

■ This court has previously held that the Missouri Administrative Practices Act (MAPA), Chapter 536, RSMo, applies to proceedings before the Commission, where there is no controlling statutory provision within Chapter 368, RSMo. Put another way, MAPA is employed whenever there is a procedural gap within the provisions of Chapter 368. *State ex rel. Noranda Aluminum, Inc. v. Public Service Comm'n*, 24 S.W.3d 243, 245 (Mo.App.2000)

■ A central point of controversy between the parties is whether this matter is a contested or noncontested case. The contested/noncontested distinction is not discussed in Chapter 368 but is instead derived from MAPA. Normally, determining whether a case is contested or noncontested is of crucial importance because it determines not only the procedural requirements that the administrative proceeding must satisfy but also the type and extent of review which the circuit and appellate courts may employ.

■ Determining whether a matter before an administrative agency is a contested or noncontested case hinges upon the answer to a single question: Was the agency required by law to hold a hearing? If so, then the matter is a contested case. § 536.010(2), RSMo. That hearing requirement may arise in multiple ways. It may be expressly required by statute or ordinance. *See State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 328 (Mo. banc 1995). Alternatively, a hearing may be otherwise required by law. In the latter context, a hearing will be required under due process principals when the agency decision concerns a protected property interest. *See id.*

Here, the statute in question, Section 392.245.9, RSMo, does not contain an express requirement that the Commission grant a hearing in response to a filed tariff. All the statute requires is that the Commission conduct an "investigation" of the costs of providing basic local and intrastate access services within one year of a company coming under "price cap" regulation. The statute does not require any additional investigation or hearing when that company seeks rebalancing of its rates. We hold, therefore, that the statutory language does not, itself, require a hearing.

Despite the lack of a statutory requirement for a hearing, Public Counsel argues that a hearing is required by law because there is a protected property interest at stake. This argument, however, is not supported by extant precedent. The Missouri Supreme Court has held that there is no protected property interest in a particular utility rate. *See State ex rel. Jackson County v. Pub. Serv. Comm'n*, 532 S.W.2d 20, 31 (Mo. banc 1975). Public Counsel relies upon language from a dissenting opinion by Judge Seiler which suggests that there *might* be a protected property interest in ensuring that a utility rate is just and reasonable. *See id.* at 35. That proposition, however, has never been adopted by a majority opinion of either this court or the Supreme Court. To accept that argument would be to grant a right of hearing in all "file and suspend" cases, a result inconsistent with other cases which clearly hold that the decision of whether to suspend a tariff and hold a hearing is a matter for the sound discretion of the Commission. *See, e.g., State ex rel. Utility Consumers Council, Inc., v. Pub. Serv. Comm'n*, 585 S.W.2d 41, 49 (Mo. banc 1979).

■ We therefore conclude that, when proceeding under Section 392.245.9, RSMo, in a "file and suspend" case, the matter is a noncontested case in which there is no automatic right to a hearing. Instead, the decision of whether to suspend a filed tar-

iff that proposes to rebalance a telecommunication company's rates under the statute and to hold a hearing may be determined by the Commission after a review of all of the relevant factors. *State ex rel. Utility Consumers Council of Mo.,* 585 S.W.2d at 41. We review that decision, and, if we conclude that the Commission acted properly in declining to hold a contested hearing, we move to the second stage of the analysis, which considers challenges to the merits of the Commission's order.

### What Standard of Judicial Review Applies?

█ In a typical noncontested case under MAPA, the circuit court does not review the record to determine whether the agency's decision is supported by substantial competent evidence. *See Cade v. State,* 990 S.W.2d 32, 37 (Mo.App.1999). Instead, the circuit court conducts a *de novo* review, including hearing evidence, making a record, and determining the facts. *Id.* Following that hearing, the circuit court must make a determination of "whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion." *Id.* The circuit court does not defer to the credibility determinations or other findings of the agency. *Id.* On appeal of the circuit court's judgment, we review the *circuit court's* judgment (not the agency determination) under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), reversing only if the circuit court's judgment does not rest upon substantial evidence or incorrectly declares or applies the law. *Id.*

█ Chapter 386, RSMo, however, includes a statutory provision limiting judicial review of all decisions of the Commission (italics added):

Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the circuit court of the county where the hearing was held or in which the commission has its principal office for a writ of certiorari or review (herein referred to as a writ of review) *for the purpose of having the reasonableness or lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined.* The writ shall be made returnable not later than thirty days after the date of the issuance thereof, and shall direct the commission to certify its record in the case to the court. On the return day the cause shall be heard by the circuit court, unless for a good cause shown the same be continued. *No new or additional evidence may be introduced upon the hearing in the circuit court but the cause shall be heard by the court without the intervention of a jury on the evidence and exhibits introduced before the commission and certified to by it.* The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceedings. Upon the hearing the circuit court shall enter judgment either affirming or setting aside the order of the commission under review. In case the order is reversed by reason of the commission failing to receive testimony properly proffered, the court shall remand the cause to the commission, with instructions to receive the testimony so proffered and rejected, and enter a new order based upon the evidence theretofore taken, and such as it is directed to receive. The court may, in its discretion, remand any cause which is reversed by it to the commission for further action. No court in this state, except the circuit courts to the extent herein specified and the supreme court

or the court of appeals on appeal, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties. The circuit courts of this state shall always be deemed open for the trial of suits brought to review the orders and decisions of the commission as provided in the public service commission law and the same shall be tried and determined as suits in equity.

§ 386.510, RSMo. (emphasis added). This statute does not differentiate between cases in which the Commission held a contested hearing and those in which it did not. In all cases, the circuit court is restricted solely to a review of the record before the Commission. Even in noncontested cases, the circuit court cannot accept other evidence or testimony.

While the statute is silent as to whether the circuit court must defer to the factual findings of the Commission in noncontested cases, we conclude that the only way to resolve this question is to treat Section 386.510, RSMo, as mandating "contested case review" for all cases arising out of the Commission, given that the circuit court is given no authority to independently hear the facts. Instead, the Commission acts as the sole factfinder with regard to all cases under its purview. Under that view, then, we may look to existing precedent to determine to what extent we must defer to the Commission's findings.

■ In a typical "file and suspend" case, our review of the Commission's decision has two stages. First, we review the Commission's decision to approve the Sprint tariff without a formal hearing. Where there is no statutory or legal requirement that the Commission conduct a hearing, we will reverse only upon a showing that the Commission abused its discretion. *See*

*State ex rel. Beaufort Transfer Co. v. Pub. Serv. Comm'n,* 593 S.W.2d 241, 251 (Mo. App.1979). If we conclude that that discretion was abused, then we will remand to the Commission for hearing.

If we conclude that the Commission acted within its discretion in denying a hearing, then we move to the second stage of our review, which entails an examination of the specific merits of the Commission's order, to determine whether it was lawful and reasonable. § 386.510, RSMo. In determining whether the Commission's order was lawful, we ask only whether the order and decision was authorized by statute. *State ex rel. Midwest Gas Users' Ass'n v. Pub. Serv. Comm'n,* 976 S.W.2d 485, 491 (Mo.App.1998). We do not defer to the Commission on this issue, but instead review that question independently. *State ex rel. City of St. Joseph v. Pub. Serv. Comm'n,* 713 S.W.2d 593, 595 (Mo.App. 1986). We examine the reasonableness of the order and decision by determining whether there was substantial, competent evidence in the record to support the order and decision, where "substantial evidence" denotes competent evidence that, if true, has probative force on the issues. *See Midwest Gas Users' Ass'n,* 976 S.W.2d at 491. If the Commission acted arbitrarily, capriciously, or unreasonably, we will reverse. *See id.*

■ The amount of deference we accord to the Commission depends upon the extent to which the issues are issues of fact or law. Where the Commission's decision is premised upon purely factual conclusions, then we defer to the Commission's findings with regard to those facts. *See id.* Conversely, if the issues are ones of law, we need not extend such deference to the Commission's findings. Where there are mixed questions of law and fact, we view the evidence in the light most favorable to the Commission's decision.

*See State ex rel. Inter–City Beverage Co., v. Mo. Pub. Serv. Comm'n,* 972 S.W.2d 397, 401 (Mo.App.1998).

### Did the Commission Err in Denying a Hearing

Our first inquiry, then, is whether the Commission erred in denying Public Counsel's motion to suspend the Sprint tariff and to hold a hearing on the issues. This corresponds with Public Counsel's third point on appeal, discussed previously. As stated above, there is no statutory requirement in Section 392.245.9, RSMo, that the Commission conduct a hearing with regard to a proposed rate rebalancing. Nor are we persuaded, especially in light of the Missouri Supreme Court's opinion in *State ex rel. Jackson County v. Public Service Commission,* 532 S.W.2d 20 (Mo. banc 1975), that there is a property interest at stake that requires procedural due process protections.

Here, the Commission premised its decision to approve the Sprint tariff based upon a cost study prepared by Sprint, as well as the recommendations by Commission staff who met with Sprint for a detailed presentation regarding the methodology and analysis employed within the cost study. The Public Counsel requested a hearing, challenging both the accuracy of the Sprint cost study as well as some of its underlying assumptions, claiming that those issues could only be resolved through a contested hearing.

Section 392.245.9, RSMo, requires the Commission to approve a rebalancing if it determines, as a result of its investigation, that the costs incurred in providing basic local and intrastate access services bear a certain mathematical relation to the prices or rates being charged for those services. No contested hearing is contemplated by the statute. Given the nature of the Commission's determination, we do not find that it abused its discretion in denying Public Counsel's hearing request.

### Adequacy of the Commission's Findings of Fact

In its order and decision, the Commission is required to include findings of fact that are not "completely conclusory." *AT & T Communications of Southwest, Inc. v. Pub. Serv. Comm'n,* 62 S.W.3d 545, 546 (Mo.App.2001).[4] The purpose of that requirement is to provide for meaningful judicial review. *See generally, State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n,* 24 S.W.3d 243, 244 (Mo.App.2000). Those findings must articulate the "basic facts from which [the Commission] reached its ultimate conclusion" regarding disposition of the case. *Id.* at 246. While detailed factual summaries are not needed there, nevertheless, must be sufficient findings of fact to determine how the controlling issues were decided by the Commission. *State ex rel. Laclede Gas Co. v. Pub. Serv. Comm'n,* 103 S.W.3d 813, 817 (Mo.App. W.D.2003).

Here, our review of this matter is impaired by the conclusory nature of the Commission's findings. That order sets out the history of the proceedings regarding the Sprint tariff, together with a limited set of factual findings.[5] Regarding the underlying issues, the order contains few findings. The order finds that the proposed increase in basic local service prices is offset by the revenue that would be lost by Sprint's proposed reduction in intra-

---

4. While *Noranda Aluminum* was a contested case in which a hearing was held, we must extend the same requirements to uncontested cases before the Commission due to § 386.510, RSMo.

5. Indeed, the Commission's order in this matter has deficiencies parallel to those found by this court in the *AT & T Communications* matter. *See AT & T Communications,* 62 S.W.3d at 547.

state access rates. The only other relevant finding is that "Staff's analysis shows that the proposed rebalancing is compliant with Section 392.245; that the mathematical test set by the statute is met." While the tariff's compliance with the statute was the ultimate issue for determination, we have no findings regarding the basic facts underlying that ultimate issue. Specifically, there were no findings regarding the accuracy or credibility of the Sprint cost study,[6] no findings regarding the comparison of the costs of providing basic local and intrastate access services in relation to the rates being charged for those services. In short, the Commission's order fails to provide sufficiently detailed findings to permit this Court to conduct a meaningful review.

We, therefore, grant Public Counsel's fourth point on appeal. As this point on appeal is dispositive, we do not reach Public Counsel's remaining points on appeal. We hereby reverse the order of the Public Service Commission and remand for further proceedings consistent with this opinion

JOSEPH M. ELLIS, Chief Judge, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.

---

**6.** For example, this Court is particularly concerned by the lack of findings that the methodology employed by the Sprint cost study was appropriate. A central issue raised by the Public Counsel is that the costs of the basic loop have been incorrectly assigned in their entirety to the "basic local service" category. The proper allocation of costs between each category of service is central to determining whether the rebalancing is appropriate under Section 392.245.9, RSMo.