STATE of Missouri ex rel. CITY OF CAPE GIRARDEAU, Plaintiff-Appellant,

v.

PUBLIC SERVICE COMMISSION of Missouri, Defendant-Respondent,

Missouri Utilities Company, Intervenor-Appellant.

No. 38950.

Missouri Court of Appeals, St. Louis District, Division Two.

May 30, 1978.

Thomas M. Utterback, Robert C. Fick, Cape Girardeau, for plaintiff-appellant.

Thomas A. Hughes, Missouri Public Service Comm., W. R. England, III, Jefferson City, for defendant-respondent.

Jack L. Oliver, Cape Girardeau, for intervenor-appellant.

STEPHAN, Judge.

This appeal arises from an order of the Public Service Commission of December 2, 1975, granting a new electrical rate schedule for the Missouri Utilities Company's Southeast Missouri Division, in which the relator City of Cape Girardeau is located. The city intervened early in the hearings of the case, filing a complaint with the commission that substantial discrimination existed in the electrical rates paid by users in the city compared with those paid by other users in the southeast division. The complaint was treated as one of the issues in the rate-setting hearings. When the commission entered its order granting the rate increases requested by the company, it specifically found that "the evidence adduced at the hearing was not sufficient to merit a rate design change as proposed by the City . . ." The Cape Girardeau Court of Common Pleas affirmed the commission's order and appeal to this court followed.[1]

---

1. This case, Public Service Commission No. 18,352, was heard jointly before the commission with PSC cases Nos. 18,246 and 18,371, which sought increases in the natural gas rates for the company's central and southeast division and in the water rates for Cape Girardeau. This appeal, however, concerns only the electric rates in the southeast division.

Although the city presented some testimony at the hearings in opposition to the amount of the proposed rate increase, the thrust of its argument there, and the only issue pursued on appeal, concerned the rate design, the allocation of the total charge among the different areas in the division. The city bases its claim of discrimination on § 393.130(3), RSMo 1969:

> "No . . . electrical corporation . . . shall make or grant any undue or unreasonable preference or advantage to any person, corporation or locality, or to any particular description of service in any respect whatsoever . . ."

The city contends that the only relevant factor in determining a fair utility rate is the cost of the service to the user. When that is determined, the utility company may charge all users a uniform fair rate of return. The city argues that it is possible to provide electricity in Cape Girardeau at a lower cost per customer than in the rest of the southeast division and that under § 393.130(3) this lower cost of service must therefore be reflected by lower rates within the city.

In support of this position, the city introduced the testimony of a consulting engineer, Mr. William A. Ford, at the hearings. Ford testified that the division encompasses eight counties in southeast Missouri, in which are located eight communities with a population over 2,500 and thirty-three with a population under 2,500. Of these, Cape Girardeau is by far the largest with a population of over 31,000. There are currently three residential and three commercial rate schedules available in the division (in addition to some special-use rates, not challenged in the hearings). Rates R1 and C1 are available in communities with a population greater than 2,500; R2 and C2 in communities under 2,500; and R3 and C3 in rural areas. Ford further testified that in servicing a large, compact area relatively

dense with customers, it is possible to achieve an "economy of size", which results in a disparity in the cost of service even among the communities serviced under the R1 and C1 schedules.

In support of that argument, Ford further testified, *inter alia*, that:[2]

(1) The city area provided a rate of return of 5.97% in 1974 compared to 3.44% for the rest of the division. The overall rate of return for the division was 4.35%. Charges to city area customers could have been reduced by $372,588 to produce a return of 4.35%, while the charges to the rest of the division would have had to be increased by $326,495 to provide such return;

(2) Under the proposed new rates, the city as a whole would pay an additional $1,801,318 per year for a rate of return of 9.37%. The rest of the division would pay an additional $2,151,047 which would provide the company with a return of 8.18%. If the city returned a similar rate, charges to city area customers would increase only $1,396,217 per year;

(3) The city produced only 45.6% of the company's electric revenues in the division in 1974, yet accounted for 64.3% of the net income before taxes;

(4) The city used 49.5% of the electricity sold in the division, yet incurred only 43.7% of the demand charge due to the lower wholesale power cost.

In short, Ford contended that these figures show that the city, with approximately four times as many customers as any other division community, is in fact subsidizing the company's operations in the division's more diffused areas, and he therefore advocated a new rate classification for the city. As noted, the commission did not believe that the evidence justified such a change.

2. Ford's statistical evidence came from a report furnished by the company showing the allocation of revenues, operating costs, taxes, etc., for its Cape Girardeau sales area and the rest of the division. The sales area extends slightly beyond the city limits to include a small section of rural and semi-rural land. The company was not able to provide a breakdown strictly along city lines. However, Ford testified, statistically the inclusion of this small amount of land will have little effect on the overall figures presented.

■ On appeal our review of the order of the commission is restricted to a determination of whether such order was lawful and reasonable. Art. V, § 22, Constitution of Mo.; § 386.510, RSMo Supp. 1973; *State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d 216, 217 (Mo.App.1973); *State ex rel. Hotel Continental v. Burton*, 334 S.W.2d 75, 78 (Mo.1960). "The question of the order's 'lawfulness' turns on whether the commission had statutory authority to issue it. . . . The question of the order's 'reasonableness' turns on whether it is supported by the competent and substantial evidence on the whole record." *State ex rel. Ozark Electric Cooperative v. Public Service Commission*, 527 S.W.2d 390, 392 (Mo.App.1975).

■ The city here challenges the commission's order on both grounds. It first contends that the commission violated the statutory duty imposed on it by § 393.130(3), RSMo 1969, to establish equitable rates in that it · shifted the burden of designing those rates to the city and it based its decision in part on certain "social factors" which were irrelevant to a consideration of the equity of the division's rate schedules.

The city maintains that although its evidence proved a lower cost of service for the city area, the commission refused to alter the existing rate design because it found it "impossible to determine which customer's rates might be excessive"; and that under § 393.130(3) the burden of this determination, no matter how onerous, rests with the commission not the city, once the city proved rate discrimination. However, what the city has seemingly chosen to ignore throughout these proceedings is that § 393.-130(3) forbids discrimination against persons as well as locations. The commission's order and report make it clear that it was aware of this dual obligation and in this case chose to emphasize equity to the individual user by maintaining a rate system designed on the basis of cost to a class of customer rather than to area. For this reason we view the issue as a question of reasonableness, and will treat it with more detail *infra*. We cannot hold as a matter of law that the city was entitled to the relief it sought merely by showing a lower cost of service to the city area as a whole.

■ The city further contends that the commission's order is unlawful because the commission admitted and considered evidence that a large percentage of customers in the division's rural areas were elderly people living on low fixed incomes and that such customers would suffer greatly should their rates be raised due to a decrease in the city's rates. This, the city argues, was improper because the only relevant factor in determining fair rates is cost of service. The question, however, is merely one of competency of the evidence and does not involve the issue of the commission's statutory authority to issue its order. If that order is supported by competent and substantial evidence on the whole record, it will not be invalidated by the admission of immaterial evidence, particularly where, as here, such evidence is not treated by the commission as the foundation for its ruling.[3]

■ Upon reviewing the transcript, we hold that the record does so support the commission's order even if we accept witness Ford's testimony as conclusive evidence of a lower cost of service for the Cape Girardeau area. Subsequent to Ford's testimony, a company spokesman, Mr. Stanley C. Whiteaker, testified that the difference in cost between the city and the rest of the division was to a great extent due to the fact that a large industrial customer

---

3. See *State ex rel. Potashnick Truck Service v. Public Service Commission*, 129 S.W.2d 69, 74 (Mo.App.1939) where it is said:

"As we have pointed out, the ultimate question for the court is whether, on the whole record, the Commission's order may be said to be reasonable and lawful, and while the court is authorized by statute (Sec. 5234, supra) to re-verse an order to the end that the Commission may receive testimony which it has improperly excluded, there is no provision of law for reversing an order by reason of the improper admission of evidence, unless it is made to appear that the order was wholly based upon such evidence which, by reason of its incompetency, lacked all probative value."

within the city, the Marquette Cement Company, was reducing its purchase of energy during peak periods through prior agreement with the appellant. This reduction resulted in a lower cost of service allocated to Marquette and, of course, to the city as a whole. Whiteaker estimated that some $150,000 to $200,000 of the cost difference between the city and the rest of the division was attributable to this reduction by one industrial user. Therefore, if the commission believed the testimony of both Ford and Whiteaker, as it reasonably could have, it would have found itself in a situation in which it was impossible not to discriminate either by class of customer or by location. If the commission implemented the city's proposed rate design it would be passing on to all residential customers within the city the benefits derived from the consumption of one user; it would be establishing residential rates which would not reflect the true cost to those individual customers. In the commission's judgment the more equitable solution to the conflict of the demands of § 393.130(3) was to maintain rates determined by cost of service to the company's different classes of customers. As noted, the city throughout the proceedings only attempted to prove discrimination to its area; it made no attempt to explain why the approach taken by the commission was less reasonable than that which it advocated. The city has therefore obviously not met the burden imposed by § 386.430, RSMo 1969, of showing by "clear and satisfactory evidence" that the commission's construction of the guidelines of § 393.130(3) was unreasonable.[4]

Although the savings attributable to Marquette do not account for the entire difference in the cost of service as between the city area and the rest of the division, the city failed to show the true cost of service to customers within its area. Failing that, the city did not establish that it is unreasonable to group the city area customers with other customers within the division who pay the R1 and C1 rates.

4. This burden has been said to require a party "to show beyond reasonable debate" that it is entitled to the relief it seeks in order to warrant reversal of commission action on judicial re-

The judgment of the trial court is, accordingly, affirmed.

STEWART, P. J., and REINHARD, J., concur.

view. *State ex rel. Laclede Gas Co. v. Public Service Commission*, 535 S.W.2d 561, 573–574 (Mo.App.1976).