STATE of Missouri, ex rel. Anthony
K. NANCE, Appellant,

v.

BOARD OF TRUSTEES FOR THE FIRE-
FIGHTERS' RETIREMENT SYSTEM
OF KANSAS CITY, MISSOURI, Respon-
dent.

No. WD 54133.

Missouri Court of Appeals,
Western District.

Jan. 6, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 3, 1998.

Steven W. Nichols, Arthur H. Stoup &
Associates, P.C., Kansas City, for appellant.

Walter J. O'Toole, Acting City Atty., Galen
Beaufort, Asst. City Atty., Kansas City, for
respondent.

Before SPINDEN, P.J., and LAURA
DENVIR STITH and EDWIN H. SMITH,
JJ.

LAURA DENVIR STITH, Judge.

Appellant Anthony K. Nance appeals the circuit court's decision denying him a duty disability pension for a back injury he claims was duty-related. He alleges that the circuit court applied the wrong standard in reviewing the Board of Trustees' decision denying him a duty disability pension. Mr. Nance also claims that the circuit court's decision was not based on substantial evidence. Finally, he argues that the circuit court erroneously required that his injury be "solely" caused by duty-related activity.

The Board found as a matter of fact that Mr. Nance had a disability, but found that his disability did not qualify him for a duty disability pension because his disability was not solely caused by an injury incurred while Mr. Nance was on duty, as the Board believed the relevant ordinances require.

Because appeal under the ordinance is by common law writ of certiorari, we review on the record made before the Board and must accept the findings of fact made by the Board. We therefore accept the Board's determination that Mr. Nance suffered an injury while on duty, that he is now totally disabled, and that his disability was partially caused by a duty-related injury. The issue whether a disability must be solely or only partially caused by an injury suffered while on duty in order to qualify for a duty disability pension is an issue of law, involving interpretation of the relevant ordinance. That ordinance requires an injury be "directly due to and caused by actual performance of duty as a firefighter" to qualify for a duty disability pension. It nowhere requires that the duty-related injury be the sole cause of the disability. The Board and the circuit court erred in so holding. Therefore, we reverse the circuit court's decision affirming the Board's denial of a duty disability pension to Mr. Nance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Anthony K. Nance has been a fire fighter for the city of Kansas City, Missouri, since 1978. Over the course of his employment, Mr. Nance has filed numerous compensation claims for a variety of injuries, several of which involved lower back pain. He also suffered injuries to his right knee and right shoulder. He had a history of deep venous thrombosis for which he had been taking Coumadin, a blood thinner, and his father and sister also had a history of phlebitic problems. He had urinary tract problems which required medication and eventually urethral surgery in 1994. He also suffered from depression, for which he took Prozac.

On June 23, 1994, while on duty, Mr. Nance helped lift a 300–pound patient in a MAST chair and claimed that this injured his back. Mr. Nance first sought medical treatment for this injury from Dr. Glenn A. Barr on June 27, 1994, only four days after the accident. On July 13, 1994, Dr. Barr gave Mr. Nance a letter instructing that he needed to be off work for 10 days. On July 22, 1994, Mr. Nance was examined by Dr. Robert P. Bruce. Dr. Bruce's office notes indicate that he recommended an MRI, which was performed on July 27, 1994, and advised Mr. Nance to stay off of work until then. On August 19, 1994, Mr. Nance had an EMG. Dr. Bruce ultimately diagnosed Mr. Nance as having a ruptured disk and being unable to return to his duties as a fire fighter. Dr. Barr concurred in that assessment. Eventually, Mr. Nance applied for a duty disability pension.

The Board of Trustees (hereafter "the Board") first considered this application on December 14, 1994. Multiple doctors chosen by the Board examined Mr. Nance and submitted their reports to the Board. At a meeting on May 24, 1995, the Board reviewed statements from the doctors that had examined Mr. Nance. These reports contained some statements suggesting that Mr. Nance's disability was duty-related and some statements suggesting that Mr. Nance's disability was not related to his duties as a fire fighter.[1] Although the Board found that Mr.

---

1. We note that the doctor principally relied on for this conclusion erroneously believed that Mr. Nance had an MRI showing a similar back injury prior to June 23, 1994, whereas he in fact had the MRI after the June 23, 1994, injury. The Board apparently also erroneously believed the

Nance did, in fact, injure himself while on duty and while attempting to lift a patient, the Board also determined that nonduty-related factors contributed to Mr. Nance's disability. We believe from the record that the Board was particularly referring to the fact that Mr. Nance refused to consent to surgery on his back because his mother had disk surgery and was disabled for over 20 years, and because, in light of his and his family's history of phlebitic problems, he feared he might die of a blood clot if he stopped taking blood thinners to have surgery. At least two of his physicians indicated that this was a realistic fear in light of his pre-existing medical and mental conditions. Because it believed Mr. Nance's condition contributed to his disability, the Board voted to give Mr. Nance a nonduty disability pension.

At a subsequent meeting held on September 27, 1995, the Board again discussed Mr. Nance's claim. At this meeting, the Board "sustained its original decision to grant a Non–Duty Disability Pension." Thereafter, the Board issued findings of fact and conclusions of law, stating that Mr. Nance "did suffer an injury on June 23, 1994, which, when coupled with non-duty factors, probably totally and permanently disabled him to the extent that he can never again perform the duties of a fire fighter. Therefor [sic] the Board grants him a non-duty disability pension effective the first of the month following his separation date as an employee of the fire department."

Mr. Nance filed a Petition for Writ of Certiorari seeking judicial review of the Board's decision. The Circuit Court of Jackson County issued a Writ, and the parties agreed that the case would be decided on the facts contained in the Certified Record of Proceedings. On February 18, 1997, the circuit court made findings of fact and affirmed the Board's decision denying Mr. Nance's application for a duty disability pension, concluding that its findings were supported by substantial evidence. This appeal followed.

## II. TRIAL COURT'S STANDARD OF REVIEW OF AGENCY'S DECISION

In Mr. Nance's first point on appeal, he claims that the circuit court applied the wrong standard of review. All parties agree that under the relevant ordinances the Board was not required to give Mr. Nance a hearing before deciding his legal rights and that this is, therefore, an uncontested case. Mr. Nance argues that under Section 536.150 [2] the circuit court was required to consider the evidence *de novo* and determine *post hoc,* on the facts and evidence as found by the court itself, whether the administrative decision was arbitrary and capricious. He also argues that it erred in simply reviewing the record to see whether substantial evidence supported the agency's decision.

Uncontested cases for which no other method of judicial review is provided are subject to judicial review under Section 536.150 of the Administrative Procedure and Review Act. *Barry Serv. Agency Co. v. Manning,* 891 S.W.2d 882, 887 (Mo.App.1995). That Section provides:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, *and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action,* and in any such review proceeding *the court may determine the facts* relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, *in view of the facts as they appear to the*

MRI had been taken before, rather than after, the injury. It appears from the record that this erroneous belief was a key reason the Board discounted the testimony of three doctors who stated that the injury was duty-related.

**2.** Unless otherwise indicated, all statutory references are to RSMo 1994.

*court*, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; ... but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

§ 536.150.1 (emphasis added).

Both parties have assumed that Section 536.150 applies here. Were that the case, then we would agree with Mr. Nance that the circuit court erred in deferring to the Board's factual findings. Section 536.150 explicitly states when review is had under Section 536.150.1, the court is to consider the evidence *de novo* and make a *post hoc* determination of the facts; it is not to defer to the findings of the Board. This is true regardless whether review is by injunction, certiorari, mandamus, or prohibition. *Barry*, 891 S.W.2d at 887; *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 95 (Mo.App. 1982).

■ We do not agree that this case is governed by Section 536.150, however. As just noted, that Section specifically states that it applies *only* if "there is no other provision for judicial inquiry into or review of such decision" of the agency whose decision is appealed. Here, however, the relevant ordinances do provide for judicial review of the Board's decision. Section 2–1256 states that the Board's "action shall be reviewable by writ of certiorari only, and any party to such certiorari proceedings shall have a right of appeal from the decision of the reviewing court." *Kansas City, Mo., Code of Ordinances* § 2–1256 (1994). As we previously noted in *Hale v. City of Kansas City*, 866 S.W.2d 190, 191–92 (Mo.App.1993), where an agency's decision is reviewable by writ of certiorari, then resort to the Administrative Procedure and Review Act is not required, and, by its own terms, Section 536.150.1 does not apply. *Id.* Section 2–1256 governs the right to review. It limits review to writ of certiorari, and that common law method of review is mandatory and exclusive. *Hale*,

866 S.W.2d at 192; *Hunter v. Madden*, 565 S.W.2d 456, 459–60 (Mo.App.1978).

■ The common law writ of certiorari is used to "confine an inferior tribunal within its jurisdictional limits." *State ex rel. Reorganized Sch. Dist. R–9 v. Windes*, 513 S.W.2d 385, 390 (Mo.1974). It "presents only questions of law on the record brought up by the return and does not permit consideration of issues of fact." *Windes*, 513 S.W.2d at 390. "At common law, certiorari proceedings are not heard de novo and the reviewing court does not weigh the evidence, but deals only with questions of law that appear on the face of the record." *State v. Ladue Professional Building, Inc.*, 395 S.W.2d 316, 321 (Mo.App.1965).

Both our and the circuit court's review of the Board's decision not to grant Mr. Nance a duty disability pension is thus confined to questions of law. We do not consider the evidence *de novo* or determine *post hoc* on the facts and evidence whether the administrative decision was arbitrary and capricious, as Mr. Nance contends on appeal. Neither do we decide whether the decision below was based on substantial evidence. Rather, we simply consider questions of law brought up on the record.

### III. LEGAL STANDARD FOR DISTINGUISHING DUTY–RELATED DISABILITY FROM NONDUTY–RELATED DISABILITY

■ Because we are confined to issues of law, we do not review the Board's factual determination that Mr. Nance suffered an injury on June 23, 1994, nor its finding that he was permanently and totally disabled partially as a result of this injury and partially because his pre-existing medical conditions precluded him from undergoing certain possible treatments, such as surgery. The only question for our review is the legal issue raised in Mr. Nance's third point on appeal: whether Mr. Nance's accident must be the sole cause of his disability to entitle him to receive a duty disability pension, or whether he is entitled to a duty disability pension if his duty-related injury combined with his other medical conditions to make him disabled.

Section 2–1267(d) states, "The board of trustees in its sole judgment shall determine whether the status of total and permanent disability exists, and its determination shall be binding and conclusive, subject to any right of review provided by this division." *Kansas City, Mo., Code of Ordinances* § 2–1267(d) (1994). A duty disability pension is available to a person "who becomes totally and permanently disabled, as defined in this division, prior to the time he is otherwise entitled to pension under this division, and directly due to and caused by actual performance of duty as a firefighter." *Kansas City, Mo., Code of Ordinances* § 2–1267(a)(1) (1994). A nonduty disability pension, which generally provides less compensation, is available to a person "who becomes totally and permanently disabled, as defined in this division, prior to the time he is otherwise entitled to a pension under this division." *Kansas City, Mo., Code of Ordinances* § 2–1267(b)(1) (1994). The decision as to which of these two types of disability pensions applies, thus, depends on whether the disability was "directly due to and caused by actual performance of duty as a firefighter."

As previously noted, the Board found that Mr. Nance "did suffer an injury on June 23, 1994." The Board, however, concluded that Mr. Nance's disability was not duty-related because it found that the accident and resulting injury on June 23, 1994, while they did occur, were not *solely* responsible for Mr. Nance's disability. The Board believed that various rehabilitative therapies were theoretically available to Mr. Nance, but that he had pre-existing mental and medical conditions which prohibited him from undertaking these treatments, particularly surgery. For this reason, the Board simply did not believe that this duty-related accident entitled Mr. Nance to duty-related disability benefits.

Mr. Nance argues that, in order to be entitled to a duty disability pension, the disability does not have to be *solely* caused by a duty-related accident. Instead, he asserts that a person may recover a duty disability pension when a duty-related injury exacerbates a pre-existing injury or combines with a prior, non-disabling condition to render the person permanently and totally disabled. In

support, he cites workers' compensation cases which set out this standard. We agree that in workers' compensation cases, "[t]he employee's work need only be a contributing factor to the injury; it is not necessary that his work be the sole cause, or even the primary cause, of the injury." *Rector v. City of Springfield,* 820 S.W.2d 639, 642 (Mo.App. 1991). *See also Sheehan v. Springfield Seed and Floral,* 733 S.W.2d 795, 797 (Mo.App. 1987).

The Board counters that the worker's compensation cases cited by Mr. Nance do not provide the relevant standard of review and that, as a matter of public policy, we should require a fire fighter to prove that the injury was *solely* caused by his duties as a fire fighter in order to allow him to recover a duty disability pension, because any other decision would be too costly in light of the limited funds available.

Unfortunately, the Board cites no authority for its position, and we are aware of no cases, whether decided under the workers' compensation statutes or under the common law, which hold that a requirement that something be a *direct* cause means that it must be a *sole* cause. To the contrary, it is well-settled that in civil negligence cases, "[t]he defendant's negligence need not be the sole cause of the plaintiff's injury, but simply a cause or a contributing cause." *Morrison v. St. Luke's Health Corp.,* 929 S.W.2d 898, 901 (Mo.App.1996). *See also Heacox v. Robbins Educational Tours, Inc.,* 829 S.W.2d 600, 603 (Mo.App.1992). Indeed, many MAI instructions specifically require that the jury find that "as a direct result of such negligence plaintiff sustained damage." MAI 17.01 [1996]. *See also* MAI 20.01 [1996]; MAI 21.01 [1996]; MAI 22.01 [1996]. Yet, MAI specifically provides that a sole cause defense may not be used, *see* MAI 1.03 [1996], and Missouri law is clear that one cannot claim one is not the direct cause of an injury just because one is not the sole cause of that injury.

Of course, the City Council could have defined a duty-related disability as one which is solely caused by a duty-related accident and not merely as one which is directly caused by it. That is not what the definition

states, however. It simply states that the disability must be "directly due to and caused by actual performance of duty as a firefighter." It does not state that the duty-related injury must be the sole cause, just a direct cause. Moreover, any argument that "direct" is not given its usual meaning in the ordinances and that the ordinances intended the words "direct cause" to be interpreted as "sole cause" must fail where, as here, the ordinances in question do use the term "sole" elsewhere, such as where they state that the Board is to determine whether a disability exists "in its *sole* judgment." Kansas City, Mo., Code of Ordinances § 2–1267(d) (1994) (emphasis added). For these reasons, the trial court erred in affirming the Board's denial of Mr. Nance's application for a duty disability pension on the basis that the injury was not the sole cause of his disability. As the Board determined that the June 23, 1994, injury did act with his pre-existing condition and rendered him totally disabled to perform his duties as a fire fighter, we reverse the circuit court's decision affirming the Board's denial of a duty disability pension for Mr. Nance and remand to the circuit court for further proceedings in accordance with this opinion.

All concur.