**STATE ex rel. PUBLIC COUNSEL, Appellant,**

v.

**PUBLIC SERVICE COMMISSION, Respondent,**

and

**Sprint Missouri, Inc., Respondent/Intervenor.**

**Nos. WD 66478 to WD 66480.**

Missouri Court of Appeals, Western District.

Nov. 7, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 19, 2006.

Application for Transfer Denied Jan. 30, 2007.

vice rates for retail residential and business customers and reducing intrastate access service rates for long distance carriers. The Office of Public Counsel intervened in opposition to the proposed rebalancing, but the commission approved the proposal without a hearing. Public counsel appeals. Because the commission's orders were lawful, we affirm the circuit court's judgment.

This is the second time for this matter to come before us. In 2002, public counsel appealed the commission's order to approve Sprint's rebalancing of rates in 2001 without an evidentiary hearing, and this court reversed and remanded the case to the commission because the commission did not make adequate findings of fact concerning the rebalancing. *State ex rel. Coffman v. Public Service Commission,* 121 S.W.3d 534 (Mo.App.2003). In that case, this court explained the basic telecommunications infrastructure and the procedural history of the case. The same information is relevant to this case, so we repeat it without further citation.

## FACTS

*Relevant Telecommunications Infrastructure*

Before a customer can make a telephone call, a telephone service provider must connect the customer's telephone to the company's central office or to a remote office, which, in turn, connects to the central office. This connection is the local loop. Switching equipment at the central office routes local calls to the called party. Connecting telephones over a local loop via local switching equipment is basic local service. Equipment at the central office also gives customers access to long-distance intrastate networks, which is intra-

Michael F. Dandino, for appellant.

William K. Haas, Jefferson City, for Public Service Commission.

Paul H. Gardner, Jr., Jefferson City, for Sprint Missouri.

PAUL M. SPINDEN, Judge.

This case concerns the three tariff requests that Sprint Missouri, Inc.,[1] filed with the Public Service Commission. It proposed a "rebalancing" of its tariffs for intrastate access services and for basic local service by increasing basic local ser-

---

**1.** Sprint Missouri, Inc., has amended its corporate name and is now incorporated under

Missouri's General and Business Corporations Law as Embarq Missouri, Inc.

state access service. A long-distance call traverses long-distance intrastate networks until it arrives at the central office serving the called party, and the office's switching equipment routes the call via the local loop to the called party's telephone.

Section 392.245.9, RSMo 2000, governs the commission's regulation of telecommunications firms that qualify as price cap companies.[2] The statute requires the commission to investigate, within one year of a company's qualifying for "price cap," the costs of providing basic local service and intrastate access service and to compare those costs with the company's charge for those services. If the commission concludes that the costs of providing basic local service are higher than the price charged for it and that the costs of providing intrastate access service are lower than the *price* charged for *it*, the statute requires the commission to permit the company to rebalance its prices by increasing charges for basic local service and decreasing charges for intrastate access service. The statute also authorizes the commission to permit the company to increase charges for basic local service to offset profit lost in reducing intrastate access prices, but the increase cannot exceed $1.50 a month in a given year. A company is eligible for rebalancing only during the first four years of its qualifying for price cap.

## The Rebalancing of Rates

Sprint qualified for price cap in 1999, and it rebalanced its rates during 2000. During 2001, it again wanted to rebalance its rates. It informally notified the commission, which arranged for a meeting of the commission's staff with Sprint person-

nel. During that meeting, Sprint explained cost studies that it had prepared to determine long-term incremental costs of providing basic access and intrastate access services.

On October 25, 2001, Sprint applied for a tariff that rebalanced its rates [3] and was to become effective on December 11, 2001. It filed its cost studies in support of its application. Public counsel objected on December 3, 2001, and asked the commission to suspend the proposed rates on the ground that Sprint's cost studies were flawed. It requested a contested hearing on the issue. On December 4, 2001, the commission ordered Sprint to file a verified copy of any cost study that demonstrated that its proposed tariffs complied with Section 392.245.9, and it ordered its staff to file a verified copy of any analysis that demonstrated that the proposed tariff complied with Section 392.245.9. After the filing of these documents, the commission denied the public counsel's request for a hearing and approved Sprint's proposed rebalancing. The commission denied the public counsel's request for rehearing, and public counsel filed a writ of review in the circuit court, which affirmed the commission's actions. Public counsel appealed to this court, and we reversed and remanded the case to the commission on the ground that the commission did not make adequate findings of fact concerning the rebalancing. *Coffman,* 121 S.W.3d at 542–43.

While the 2001 rebalancing of rates case was moving through the courts, the commission also approved tariffs that rebalanced Sprint's rates for 2002 and 2003. The commission's orders for these tariffs

---

**2.** The legislature enacted the price cap regulation statutes to allow some deregulation to telecommunication companies while protecting consumers, to some extent, from dramatic price increases.

**3.** Sprint used the "file and suspend" method in which a utility files proposed rates with the commission, which may elect to suspend those rates pending further investigation or hearing or permit the rates to go into effect without further action by the commission.

referred to its 2001 rebalancing order and noted that it relied on its 2001 rebalancing order to justify its decision to approve the 2002 and 2003 rebalanced rates. The commission denied the public counsel's motion for rehearing, and public counsel filed petitions for writ of review on the 2002 and 2003 rebalancing orders with the circuit court. Because this court had remanded the 2001 rebalancing order to the commission and because the commission based its 2002 and 2003 rebalancing orders on the 2001 rebalancing order, the circuit court remanded the 2002 and 2003 rebalancing orders to the commission for it to make findings of fact for those orders, too.

Concerning the 2001 rebalancing, public counsel again requested a hearing while the commission was responding to this court's mandate. The commission, although not convinced that a hearing was necessary, directed the parties to file written arguments and testimony. The parties filed their respective arguments, testimony, and affidavits. On December 23, 2004, the commission issued an "Order on Remand" making additional findings of fact and conclusions of law in regard to Sprint's proposed rebalancing of 2001 rates. The commission concluded that a hearing was not required and based its decision on the previous record without relying on evidence submitted after the case was remanded. The commission again concluded that Sprint provided sufficient evidence to justify its proposed rebalancing. Public counsel filed a motion for rehearing, and the commission denied that motion. Public counsel filed a petition for writ of review with the circuit court.

On March 3, 2005, the commission also issued an "Order on Remand" concerning Sprint's proposed rebalancing of 2002 and 2003 rates. The commission again found that its orders were "wholly dependent" on the order that it had issued concerning rebalancing of 2001 rates, so the commission adopted its findings of fact and conclusions of law issued in its order to rebalance 2001 rates. Public counsel filed motions for rehearing in those cases, and the commission denied them. Public counsel filed petitions for writ of review with the circuit court.

The circuit court consolidated the three cases for briefing and argument. On December 9, 2005, the circuit court found that the commission's orders were lawful and reasonable and affirmed the commission's orders allowing Sprint to rebalance its 2001, 2002, and 2003 rates. Public counsel appealed each case to this court, and we consolidated them.

## DISCUSSION

*Review of Noncontested Cases under Section 386.510.*

■ In the first appeal of this case, this court concluded that the price cap statute, Section 392.245.9, did not expressly require the commission to grant a hearing in response to a tariff request. We reasoned:

All the statute requires is that the [c]ommission conduct an "investigation" of the costs of providing basic local and intrastate access services within one year of a company coming under "price cap" regulation. The statute does not require any additional investigation or hearing when that company seeks rebalancing of its rates. We hold, therefore, that the statutory language does not, itself, require a hearing.

*Coffman,* 121 S.W.3d at 539. We also found that, because no protected property interest was at stake, the law did not require a hearing. *Id. See also State ex rel. Jackson County v. Public Service Commission,* 532 S.W.2d 20, 31 (Mo. banc 1975), *cert. denied,* 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976). Thus, in a "file

and suspend" case under Section 392.245.9, the matter is a noncontested case. *Coffman,* 121 S.W.3d at 539.

▪ We also determined that Section 386.510, RSMo 2000, provides the exclusive procedure for judicial review of *all* of the commission's orders, including those involving noncontested cases. *Id.* at 540–41. *See also State ex rel. AG Processing, Inc. v. Public Service Commission,* 120 S.W.3d 732, 735 (Mo. banc 2003); *State ex rel. Atmos Energy Corporation v. Public Service Commission,* 103 S.W.3d 753, 758 (Mo. banc 2003). Section 386.510 says:

Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the circuit court of the county where the hearing was held or in which the commission has its principal office for a writ of certiorari or review (herein referred to as a writ of review) for the purpose of having the reasonableness or lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined. . . . No new or additional evidence may be introduced upon the hearing in the circuit court but the cause shall be heard by the court without the intervention of a jury on the evidence and exhibits introduced before the commission and certified to by it. The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceedings. Upon the hearing the circuit court shall enter judgment either affirming or setting aside the order of the commission under review. In case the order is reversed by reason of the commission failing to receive testimony properly proffered, the court shall remand the cause to the commission, with instructions to receive the testimony so proffered and rejected, and enter

a new order based upon the evidence theretofore taken, and such as it is directed to receive. The court may, in its discretion, remand any cause which is reversed by it to the commission for further action. No court in this state, except the circuit courts to the extent herein specified and the supreme court or the court of appeals on appeal, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties. The circuit courts of this state shall always be deemed open for the trial of suits brought to review the orders and decisions of the commission as provided in the public service commission law and the same shall be tried and determined as suits in equity.

Section 386.510 applies to contested cases, noncontested cases, and to challenges to rules before the commission. *Atmos Energy,* 103 S.W.3d at 758 (Section 386.510 governs judicial review of a commission rule); *Union Electric Company v. Clark,* 511 S.W.2d 822, 824 (Mo.1974) ("General Order 51, whether it be called a rule or an order, is clearly within the term 'original order or decision' as used in Section 386.510," and "Section 386.510 authorizes and permits review of the alleged lawfulness of General Order 51"); *Coffman,* 121 S.W.3d at 541 (Section 386.510 applies to noncontested and contested cases); *State ex rel Fee Fee Trunk Sewer, Inc., v. Public Service Commission,* 522 S.W.2d 67, 72 (Mo.App.1975) (Section 386.510 applies to all of the commission's orders).

Indeed, during 2001, the General Assembly made clear that it intended for Section 386.510 to be exclusive to any other procedure of review by enacting Section 386.515, RSMo Supp.2005, which says:

Prior to August 28, 2001, in proceedings before the Missouri public service commission, consistent with the decision of the supreme court of Missouri in *State ex rel. Anderson Motor Service Co., Inc. v. Public Service Commission* [339 Mo. 469], 97 S.W.2d 116 (Mo. banc 1936) the review procedure provided for in section 386.510 is exclusive to any other procedure. An application for rehearing is required to be served on all parties and is a prerequisite to the filing of an application for writ of review. The application for rehearing puts the parties to the proceeding before the commission on notice that a writ of review can follow and any such review may proceed without formal notification or summons to said parties. On and after August 28, 2001, the review procedure provided for in section 386.510 continues to be exclusive except that a copy of any such writ of review shall be provided to each party to the proceeding before the commission, or his or her attorney of record, by hand delivery or by registered mail, and proof of such delivery or mailing shall be filed in the case as provided by subsection 2 of section 536.110, RSMo.

The General Assembly did not make a distinction between contested or noncontested cases in this statute. Hence, assuming that an applicant has filed an application for a rehearing with the commission and that the commission has ruled on the application for a rehearing, the applicant may apply to the circuit court for a writ of *certiorari* or review "for the purpose of having the reasonableness or lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined."[4] Section 386.510.

Moreover, Section 386.510 says that, in seeking review of the commission's order, an applicant may apply to the circuit court for a writ of *certiorari* or review. In *State ex rel. Southwestern Bell Telephone v. Brown*, 795 S.W.2d 385, 388 (Mo. banc 1990), the Supreme Court concluded that "the legislature intended something other than an appeal when it designated the action contemplated by Section 386.510 an application for a writ of certiorari or review." According to the *Brown* court, the purpose of Section 386.510 to have "the reasonableness or lawfulness of the original order or decision ... inquired into or determined[,]" closely tracks the general definition of a common law writ of *certiorari*. *Id.* at 387. "'The office of the common-law writ of certiorari ... generally extends to the review of all questions of jurisdiction, power, and authority of the inferior tribunal to do the action complained of, and all questions of irregularity in the proceedings.'" *Id.* at 387–88 (quoting 14 AMERICAN JURISPRUDENCE 2d, *Certiorari* Section 2 (1964)).

The purpose of the common law writ of *certiorari* is to ascertain that an inferior tribunal is acting within its jurisdictional limits. *State ex rel. Nance v. Board of Trustees for the Firefighters' Retirement System of Kansas City*, 961 S.W.2d 90, 93 (Mo.App.1998). Only questions of law are at issue in an action for a common law writ of *certiorari*. *Id.; State ex rel. Reorganized School District R–9 of Grundy County v. Windes*, 513 S.W.2d 385, 390 (Mo.1974). Because questions of

---

**4.** Although "rehearing" seems to suggest that the commission held a hearing to be reheard, this is not necessarily the case. Section 386.510 applies to noncontested cases. *Coffman*, 121 S.W.3d at 541. When, therefore, an applicant files an application for rehearing with the commission in a noncontested case, the applicant is essentially seeking a reconsideration of the commission's order and not a rehearing because no hearing was held in the noncontested case.

fact are not at issue, common law *certiorari* proceedings are not heard *de novo,* and the reviewing court does not weigh the evidence but considers only questions of law that appear on the face of the record. *Nance,* 961 S.W.2d at 93; *State ex rel. Weinhardt v. Ladue Professional Building, Inc.,* 395 S.W.2d 316, 321 (Mo.App. 1965).

■ As for the record on review, " '[c]ertiorari' . . . is a writ 'directing a lower court to deliver the record in the case for review.'" *State ex rel. Public Service Commission v. Dally,* 50 S.W.3d 774, 776 (Mo. banc 2001) (quoting BLACK's LAW DICTIONARY 220 (7th ed.1999)). Indeed, Section 386.510 instructs, "No new or additional evidence may be introduced upon the hearing in the circuit court but the cause shall be heard by the court . . . on the evidence and exhibits introduced before the commission and certified to by it."

■ In a typical noncontested case, the circuit court does not review the record to determine whether or not the agency's decision is supported by substantial and competent evidence. Instead, pursuant to Section 536.150, RSMo 2000, the circuit court "conducts a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion." *Cade v. State,* 990 S.W.2d 32, 37 (Mo.App.1999). Thus, in a noncontested case, the circuit court does not review evidence as it would in a contested case, but makes the record by hearing evidence, and, based on the facts that it finds, adjudges the validity of the administrative agency's decision. *State ex rel. Rice v. Bishop,* 858 S.W.2d 732, 735–36 (Mo.App.1993). Given this procedure, the reviewing court owes no deference of cred-

ibility to the administrative agency's decision. *Id.* at 736.

■ Section 536.150, however, applies only when the General Assembly has made no other provisions for judicial review. *Nance,* 961 S.W.2d at 93. When the legislature has provided another mode for judicial review of an agency's decision, this mode is exclusive and mandatory, and Section 536.150 does not apply. *Id.; Hale v. City of Kansas City,* 866 S.W.2d 190, 191–92 (Mo.App.1993). Hence, because Section 386.510 provides a method of review for noncontested cases before the commission, Section 536.150 does not apply.

The issue, therefore, becomes what do we review in a noncontested case under Section 386.510 and for what do we review? Indeed, this was an issue with which this court struggled in its first consideration of this case. *Coffman,* 121 S.W.3d at 541. This court concluded that, because Section 386.510 was silent as to whether the circuit court must defer to the commission's factual findings in noncontested cases, we had to "treat Section 386.510, RSMo, as mandating 'contested case review' for all cases arising out of the Commission, given that the circuit court is given no authority to independently hear the facts." *Id.* In reaching this conclusion, we determined that, in a noncontested case, the commission must make findings of fact that are not completely conclusory in all of its orders and decisions to allow for meaningful judicial review. *Id.* at 542–43.

We remanded the case to the commission so it could make findings of fact to assist us in our review of the commission's order. We determined that our review of the commission's order required a two-stage process for noncontested cases under Section 386.510: first, a determination of whether or not the commission abused

its discretion in denying a hearing in the absence of a statutory or legal requirement that the commission conduct a hearing, and, secondly, if the commission acted within its discretion in denying a hearing, we were to examine "the specific merits of the [c]ommission's order, to determine whether it was lawful and reasonable." *Id.* at 541.

■ This court correctly concluded that "[i]n determining whether the [c]ommission's order was lawful, we ask only whether the order and decision was authorized by statute. We do not defer to the [c]ommission on this issue, but instead review that question independently." *Id.* (citations omitted). We also concluded that "we examine the reasonableness of the order and decision by determining whether there was substantial, competent evidence in the record to support the order and decision, where 'substantial evidence' denotes competent evidence that, if true, has probative force on the issues." *Id.*

■ We can determine whether or not the commission abused its discretion in denying a hearing and whether or not the commission's order was lawful without findings of fact. Determining the reasonableness issue is another matter. We cannot determine reasonableness without findings of fact. Indeed, in examining the reasonableness of the commission's order, we must determine whether or not it is supported by competent and substantial evidence. *AG Processing*, 120 S.W.3d at 734–35; *State ex rel. Laclede Gas Company v. Public Service Commission*, 156 S.W.3d 513, 520 (Mo.App.2005); *State ex rel. U.S. Water/Lexington v. Public Service Commission*, 795 S.W.2d 593, 595 (Mo.App.1990); *State ex rel. Marco Sales, Inc. v. Public Service Commission*, 685 S.W.2d 216, 218 (Mo.App.1984); *State ex rel. City of Cape Girardeau v. Public Service Commission*, 567 S.W.2d 450, 453

(Mo.App.1978). How can we determine the reasonableness of the commission's order without findings of fact? But, an even more problematic issue is: How can we determine the reasonableness of the commission's decision in a noncontested case in which the commission has not received competent and substantial evidence from which to make findings of fact? As this court has noted, "In a noncontested case ..., the administrative body acts on discretion or on evidence not formally adduced and preserved." *Phipps v. School District of Kansas City*, 645 S.W.2d 91, 94–95 (Mo.App.1982). Given the nature of a noncontested case, requiring a showing that an agency's decision is supported by competent and substantial evidence would be "inherently contradictory." I Mo. Administrative Law, *Public Service Commission*, Section 12.30 (Mo. Bar 3rd ed.2000). This is because, in noncontested cases, "there is no record from the administrative body." *State ex rel. Fortney v. Joiner*, 797 S.W.2d 848, 852 (Mo.App.1990).

The Supreme Court has declared that the lawfulness and reasonableness standard in Section 386.510 is essentially the same as the standard of review applied to cases decided by other administrative tribunals. *Love 1979 Partners v. Public Service Commission*, 715 S.W.2d 482, 486 n. 8 (Mo. banc 1986). Indeed, in *Atmos Energy*, 103 S.W.3d at 759, a case involving a challenge to a rule promulgated by the commission, the Supreme Court acknowledged that the standard of review of a commission's order of rulemaking is essentially the same as the review of cases decided by other administrative tribunals. The *Atmos Energy* court concluded that, in reviewing a challenge to a rule, we must sustain the commission's order if it is "'supported by substantial evidence on the record as a whole.'" *Id.* (citation omitted). In explaining judicial review for reason-

354 ■

ableness, the Supreme Court instructed that "the issue of reasonableness is ... determine[d by] whether the order is supported by competent and substantial evidence upon the whole record." *State ex rel. Kansas City Transit, Inc. v. Public Service Commission*, 406 S.W.2d 5, 11 (Mo. banc 1966).[5]

■ "The scope of judicial review of decisions of the Commission is forged by Mo. CONST. Art. V, Section 18[.]" *Marco Sales*, 685 S.W.2d at 218. Article V, Section 18 says:

All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.

The competent and substantial evidence standard of Article V, Section 18, however, does not apply to administrative case in which a hearing is not required by law.

In *Marco Sales*, this court noted the similarities between Article V, Section 18, and Section 386.510 and commented:

Judicial inquiry into the "reasonableness or lawfulness" of decisions or orders of the Commission prescribed by Section 386.510 ... is nothing more than a reaf-

firmation of the constitutional mandate as questions of "lawfulness" turn on whether the Commission's orders or decisions are statutorily authorized and questions of "reasonableness" turn on whether there is competent and substantial evidence upon the whole record to support them.

685 S.W.2d at 218.

According to Section 386.510, however, an applicant may apply to the circuit court for a writ of *certiorari* or review "for the purpose of having the reasonableness *or* lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined."[6] The disjunctive "or" usually "marks an alternative 'which generally corresponds to the word "either." ' " *Council Plaza Redevelopment Corporation v. Duffey*, 439 S.W.2d 526, 532 (Mo. banc 1969) (citation omitted). Thus, by using "or" in Section 386.510, the General Assembly authorized judicial review of a commission's order that probes either its lawfulness or reasonableness and not necessarily both. A review of a commission order issued in a contested case, of course, would require a probing of both, but review in a noncontested typically probes only the lawfulness of an agency's order without consideration of its reasonableness and without need for review of competent and substantial evidence. Thus, as is the case in Mo. CONST. art. V, Section 18, the "competent and substantial evidence" would not apply to the commission's cases in which a hearing was not required by law.

**5.** Eight years earlier, the Supreme Court enunciated a fuller standard for reviewing the reasonableness of the Public Service Commission's orders in *State ex rel. Chicago, Rock Island & Pac. R.R. Co. v. Pub. Serv. Comm'n*, 312 S.W.2d 791, 796 (Mo. banc 1958): "[W]hen the court has determined whether an order or decision of the commission (made in the lawful exercise of its discretionary pow-

ers) is supported by competent and substantial evidence upon the whole record and is reasonable, or, as is sometimes conversely stated, whether it is arbitrary or capricious or is against the overwhelming weight of the evidence, the court has performed its whole duty."

**6.** We added the emphasis.

Rather than perpetuating it as being the "law of the case," we are charged with correcting the mistake that we made in remanding the case to the commission and ordering it to make findings of fact. *Sumnicht v. Sackman*, 968 S.W.2d 171, 178 (Mo.App.1998). Thus, to the extent that this court required the commission to issue findings of fact in a noncontested case, we erred.[7] Because it was a noncontested case, the commission did not have competent and substantial evidence from which to make its findings of fact, and, because we are not required to determine the reasonableness of the commission's order, we unnecessarily burdened the commission with an obligation to make findings of fact. To the extent that *Coffman* holds that the commission in a noncontested case is required to make findings of fact to allow for meaningful judicial review, it should not be followed.[8] Hence, we decline public counsel's request that we remand this case again because of the commission's failure to make adequate findings of fact to support its orders on remand.

Because this is a noncontested case, we will judge only whether or not the commission abused its discretion in denying a hearing and whether or not the commission's order was lawful. Having previously determined in the first appeal that the price cap statute, Section 392.245.9, did not contain an express requirement that the commission grant a hearing in response to a filed tariff, *Coffman*, 121 S.W.3d at 539, we now turn to the issue raised by public counsel concerning whether or not the commission's order was lawful.

*Investigation and Written Report*

Public counsel asserts that the commission's order on remand approving Sprint's rebalancing of rates is unlawful because the commission did not conduct an investigation as required by Section 392.245.9 and did not issue a written report of the conclusions of its investigation as required by Section 386.420.2, RSMo 2000. We disagree.

■ Section 392.245.9 says, "[T]he commission shall complete an investigation of the cost justification for the reduction of intrastate access rates and the increase of maximum allowable prices for basic local telecommunications service." Public counsel contends that the commission did not conduct an investigation. He argues:

> The record does not identify a proceeding denominated the investigation called for by this statute. The record does not disclose an order convening such an investigation. The record does not disclose any Commission proceeding or hearing at which Public Counsel, the long distance companies, or any interested party could attend or listen to the details of the cost studies or have the opportunity to ask questions or present contrary information. The Orders do not make a finding or a conclusion of law that the Commission conducted that investigation.

---

7. Section 386.420.2, RSMo 2000, however, requires the commission "to make a report in writing ..., which shall state the conclusions of the commission, together with its decision, order or requirement in the premises."

8. In *State ex rel. Acting Pub. Counsel Coffman v. Pub. Serv. Comm'n*, 150 S.W.3d 92, 101 (Mo.App.2004), this court relied on *Coffman*, 121 S.W.3d at 542, in concluding that "[w]hether a case is contested or uncontested,

this court has held that the requirements of Sections 386.420.2 and 536.090 apply such that the Commission's decision or order is required to be in writing, including findings of fact and conclusions of law." Thus, to the extent that this case also requires the commission to issue findings of fact in a noncontested case, it should not be followed. This opinion has been reviewed and approved by order of the court *en banc*.

Section 392.245.9, however, does not require the commission to follow any particular procedure in conducting its rate rebalancing investigation. The commission conducted the investigation into the cost justification within the context of reviewing Sprint's request for a rate rebalancing in 2001. In this investigation, Sprint and the commission's staff presented the commission with extensive documentation for its review and the public counsel's objections. Before Sprint filed its tariff request, it contacted the commission and met with the commission's staff at the commission's suggestion during which Sprint outlined its intention to seek rate rebalancing and explained the cost studies that it had prepared to determine the long term incremental costs of providing basic access service and intrastate access services. Indeed, after Sprint filed its tariff request, the commission ordered Sprint to file a verified copy of any cost study that demonstrated that its proposed tariff sheets complied with Section 392.245.9 and ordered its staff to file a verified copy of any analysis, recommendation, or memorandum including any work papers that demonstrate the compliance of the proposed tariffs with Section 392.245.9. Contrary to public counsel's assertion, the commission investigated "the cost justification for the reduction of intrastate access rates and the increase of maximum allowable prices for basic local telecommunications service" as required by Section 392.245.9.

Public counsel also contends that the commission did not issue a written report of the conclusions of its investigation as required by Section 386.420.2. Section 386.420.2 says, "Whenever an investigation shall be made by the commission, it shall be its duty, to make a report in writing in respect thereto, which shall state the conclusions of the commission, together with its decision, order or requirement in the premises." The commission did issue such a report, its "Order on Remand." Indeed, because this court erroneously required the commission to issue findings of fact, the commission's order went beyond what was required in Section 386.420.2. The commission's order clearly articulates the commission's conclusion together with its order approving Sprint's proposed rate rebalancing as required by Section 392.245.9.

*Evidence Adduced after Remand*

In his next point, public counsel asserts that the commission's decision is unlawful because the commission arbitrarily and without explanation did not consider any evidence adduced or filed in the case after remand and instead based its order on the record as it existed on December 6, 2001, when the commission first decided the case. Public counsel notes that the commission invited the parties to submit "written arguments, testimony and other evidence, if any, regarding the cost custody previously filed in this matter by Sprint" and then "refused to consider this record evidence without reason, justification, or any indication that would excuse the PSC from its duty to consider all of the competent and substantial evidence in the whole record."

Contrary to public counsel's assertion, the commission did explain why it was not considering additional evidence. The commission's order said:

On February 2, 2004, the Circuit Court of Cole County, Missouri issued an order remanding this case to the Commission pursuant to the decision of the Court of Appeals. On February 6, 2004, the Commission issued an order offering the parties the opportunity to provide suggestions as to how the Commission should proceed on remand. Both Sprint and Staff proposed that the Commission detail the facts in the record that supported its December 6, 2001

order, as the record existed at that time. Sprint provided proposed findings of fact and conclusions of law (which the Commission has largely adopted herein).

Public Counsel, on the other hand, insisted that additional evidence should be considered on remand. Public Counsel, in a filing made April 9, 2004, reiterated the arguments it made in the fall of 2001 and offered written testimony to support those arguments. These arguments were fully considered by the Commission when they were first raised, and found to be insufficient to require a hearing. The Court of Appeals affirmed the Commission's discretion to proceed without a hearing. Nothing Public Counsel has raised on remand has changed the landscape sufficiently to now require a hearing.

We remanded the case in the original appeal on the ground that the commission's order did not, we then perceived, provide sufficiently detailed findings to permit us to conduct a meaningful review. We reversed and remanded "for further proceedings consistent with this opinion." *Coffman*, 121 S.W.3d at 543. Nothing in our opinion or in the statutes required the commission to consider additional evidence submitted after the remand.

*Long Range Incremental Cost Studies*

Public counsel asserts that the commission erred in approving Sprint's tariffs because Sprint's cost study methodology for basic local service was inappropriate. According to the public counsel, Sprint improperly allocated all loop costs to basic local service when the loop is a facility that is necessary and used by Sprint to provide a number of telecommunications services, including switched access. As a result, public counsel contends, the local service cost study is not a proper and accurate measure of the long run incremental costs of that service. We disagree.

Section 392.245.9 directs the commission to investigate the long run incremental costs for basic local telecommunications service and for access rates. This statute says:

If the commission determines that the company's monthly maximum allowable average statewide prices for basic local telecommunications service after adjustment pursuant to this subsection will be equal to or less than the long run incremental cost, as defined in section 386.020, RSMo, of providing basic local telecommunications service and that the company's intrastate access rates after adjustment pursuant to this subsection will exceed the long run incremental cost, as defined in section 386.020, RSMo, of providing intrastate access services, the commission shall allow the company to offset the revenue loss resulting from the remaining three-quarters of the total needed to bring that company's intrastate access rates to one hundred fifty percent of the interstate level by increasing the company's monthly maximum allowable prices applicable to basic local telecommunications service by an amount not to exceed one dollar fifty cents on each of the next three anniversary dates thereafter; otherwise, the commission shall order the reduction of intrastate access rates and the increase of monthly maximum allowable prices for basic local telecommunications services to be terminated at the levels the commission determines to be cost-justified. The total revenue increase due to the increase to the monthly maximum allowable prices for basic local telecommunications service shall not exceed the total revenue loss resulting from the reduction to intrastate access service rates.

Section 386.020(32), RSMo 2000, defines "long run incremental cost:"

> [T]he change in total costs of the company of producing an increment of output in the long run when the company uses least cost technology, and excluding any costs that, in the long run, are not brought into existence as a direct result of the increment of output. The relevant increment of output shall be the level of output necessary to satisfy total current demand levels for the service in question, or, for new services, demand levels that can be demonstrably anticipated[.]

Consistent with Section 386.420.2, the commission stated its conclusions of its investigation and found that Sprint's cost studies use a long run incremental cost method consistent with the statutory directive in Section 392.245.9. The commission concluded:

> Section 386.020(32) specifically excludes from the Commission's consideration any cost not brought into existence as a direct result of the increment of output subject to the cost studies. Therefore, in considering the long run incremental cost of basic local service that requires switched voice services within a local calling scope, we find that it does not violate the statutory definition of long run incremental cost to include a substantial portion, and perhaps the entire portion, of the jurisdictionalized loop cost as cost of basic local service. Further, in considering the long run incremental cost of access service that allows a telecommunications company to enter and exit the local exchange telecommunications network, we find that it does not violate the statutory definition of long run incremental cost to exclude a substantial portion, and perhaps the entire portion, of the jurisdictionalized loop cost as cost of access service. If Sprint did not offer access

service, the cost of the loop would not go away. Finally, given the large margins of error with respect to allocating loop costs discussed above, we find that the Commission does not have to make a definitive finding in this case on what exact percentage of the loop, if any, needs to be allocated away from basic local telecommunications service to intrastate switched access services. Based on the above, we find that Sprint's cost studies are consistent with the statutory directive to identify cost based on long run incremental cost as defined in Section 386.020(32).

Moreover, the commission concluded that Sprint's cost studies that provided input for the mathematical equation produced accurate and reasonable results. The commission explained:

> First, as an independent and knowledgeable party, Staff[,] spent a substantial amount of time and effort in the evaluation of Sprint's cost models. This information formed a part of Staff's recommendation to approve Sprint's requested tariff changes. Second, Sprint's costs for basic local service are so far above Sprint's rates that even if an error was made, that error would have to produce results nearly 50% below what was produced by Sprint's cost study to make a difference in the Commission's calculation. With reference to Sprint's access study, the error would have to be even greater than 50% to have any effect on the Commission's mathematical determination.

> Thus, the margin of error is substantial. Furthermore, there are no indications of any errors, much less substantial errors in Sprint's cost studies. Sprint's cost studies are correct and fully comply with the statutory requirement to reflect long run incremental cost.

. . . .

[E]ven if large portions of the costs are allocated away from the basic loop, Sprint still meets the statutory test. While the Commission is not concluding that all cost studies for all purpose should allocate the entire cost of the loop to basic service, the fact that Sprint's cost study did not does not require the Commission to reject it. The numbers produced by the study are robust enough for the Commission to conclude, and the Commission does conclude, that under any reasonable allocation of loop costs, Sprint's proposed rebalancing meets the statutory test.

Given the commission's conclusions, we find nothing unlawful about its order. "The public service commission is essentially an agency of the Legislature and its powers are referable to the police power of the state." *Chicago, Rock Island,* 312 S.W.2d at 796. Section 392.245.9 is a delegation of legislative power to the commission to investigate "the cost justification for the reduction of intrastate access rates and the increase of maximum allowable prices for basic local telecommunications service." This cost justification is based on application of the long run incremental cost criteria as defined by Section 386.020 and essentially prescribes a rate making process. Where such ratemaking is at issue, the commission's determination carries a presumption of validity because of the inherent complexities of the ratemaking process. *State ex rel. Office of the Public Counsel v. Public Service Commission,* 938 S.W.2d 339, 344 (Mo.App.1997).

Although public counsel disagrees with the commission's methodology and conclusions, the commission fully explained why public counsel's contentions lacked merit. Public counsel asserts that its evidence submitted after the remand from two economists established that Sprint employed an improper long run incremental cost methodology for its cost justification. As we have previously noted, the commission based its order on remand on the record as it existed on December 6, 2001.

Moreover, that public counsel has contrary evidence does not establish that the commission's order is unlawful. Although public counsel claims that the testimony of his two economists established that loop cost is a joint and common cost and should be excluded from the cost of local service, public counsel does not challenge the commission's conclusion that "even if large portions of the costs are allocated away from the basic loop, Sprint still meets the statutory test." The commission concluded that the "numbers produced by the study are robust enough" for it to conclude, "under *any* reasonable allocation of loop costs," that Sprint's proposed rebalancing meets the statutory test.

To the extent that public counsel asserts that Sprint's cost studies did not meet the admissibility criteria of Section 536.070(11), RSMo 2000, we are not persuaded. Section 536.070 does not apply to noncontested investigations under Section 392.245.9. Moreover, although public counsel complains about the commission's reliance on its staff's recommendation, the commission is "a fact-finding body, exclusively entrusted and charged by the Legislature to deal with and determine the specialized problems arising out of the operation of public utilities," and the commission has "a staff of technical and professional experts to aid it in the accomplishment of its statutory powers." *Chicago, Rock Island,* 312 S.W.2d at 796.

*Refund or Credit to Local Service Customers*

In its final point, public counsel asserts that the commission erred by not ordering Sprint to refund or credit to local service customers the rates increased by the com-

mission's original orders, which were reversed and remanded by this court and the circuit court. We disagree.

▪ Section 386.270, RSMo 2000, says:

All rates, tolls, charges, schedules and joint rates fixed by the commission shall be in force and shall be prima facie lawful, and all regulations, practices and services prescribed by the commission shall be in force and shall be prima facie lawful and reasonable until found otherwise in a suit brought for that purpose pursuant to the provisions of this chapter.

This statute establishes that "the legislature intended the orders of the Commission to remain in force and be *prima facie* lawful until found otherwise by the ultimate ruling of a court at the conclusion of the appeal process." *State ex rel. GTE North, Inc. v. Public Service Commission*, 835 S.W.2d 356, 367 (Mo.App.1992). In the first appeal, this court did not reach the merits of whether or not Sprint's rebalancing tariffs were lawful. We merely reversed because of insufficient findings. Under these circumstances, the statutory presumption in favor of Sprint's rates and charges authorized by the rebalancing tariffs remain in force.

### Conclusion

The commission's orders on remand were lawful. We affirm.

HAROLD L. LOWENSTEIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.